MILWAUKEE SYMPHONY ORCHESTRA, INC.,
Petitioner-Appellant-Cross-Respondent,†

v.

WISCONSIN DEPARTMENT OF REVENUE,
Respondent-Respondent-Cross-Appellant.

Court of Appeals

No. 2008AP1684. *Submitted on briefs February 10, 2009.
—Decided April 16, 2009.*

2009 WI App 69

(Also reported in 767 N.W.2d 360.)

† Petition to review granted 8/17/09.

On behalf of the petitioner-appellant-cross-respondent, the cause was submitted on the briefs of *Robert A. Schnur, Timothy G. Schally* and *Sarah L. Fowles* of *Michael Best & Friedrich LLP*, Milwaukee.

On behalf of the respondent-respondent-cross-appellant, the cause was submitted on the briefs of *F. Thomas Creeron III, asst. attorney general,* and *J.B. Van Hollen, attorney general.*

Before Dykman, Vergeront and Bridge, JJ.

¶ 1. VERGERONT, J. The Tax Appeals Commission determined that the concert performances of the Milwaukee Symphony Orchestra, Inc., were properly characterized as entertainment events under Wis. Stat. § 77.52(2)(a)2. (2007–08),[1] which imposes a sales tax on "the sale of admissions to ... entertainment ... events ...." The issue on this appeal and cross-appeal is whether the commission's decision is correct. We conclude the commission's decision is entitled to due weight deference, and, applying that standard, we conclude the commission properly interpreted and applied the statute. Accordingly, we reverse the circuit court's decision ordering a remand to the commission and direct the circuit court to enter an order affirming the commission's decision.

## BACKGROUND

¶ 2.   Milwaukee Symphony Orchestra, Inc. (MSO), is incorporated as a not-for-profit corporation under Wis. Stat. ch. 181. It is a professional, full-time orchestra and employs approximately ninety musicians. MSO presents approximately 100–150 concerts per year.

¶ 3.   In July 1997, MSO filed amended sales tax returns for September 1, 1992, through August 31, 1996, claiming a refund of $719,456.69 in sales tax that

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

it had previously paid on its sales, including all of its ticket sales. The sales at issue are ticket sales that MSO made directly to its patrons and indirectly through Ticketmaster. MSO's stated reason for the refund, as relevant to this appeal, is that the symphony concerts are primarily educational or charitable and are therefore not taxable under WIS. STAT. § 77.52(2)(a)2. This statute imposes a 5% sales tax on the gross receipts from "the sale of admissions to amusement, athletic, entertainment or recreational events or places . . . ."[2]

¶ 4. The Department of Revenue denied all but $585.36 of the claim, taking the position that MSO's concerts were amusement, entertainment, and/or rec-

---

[2] Wisconsin Stat. § 77.52(2)(a)2. provides in full:

(2) For the privilege of selling, performing or furnishing the services described under par. (a) at retail in this state to consumers or users, a tax is imposed upon all persons selling, performing or furnishing the services at the rate of 5% of the gross receipts from the sale, performance or furnishing of the services.

(a) The tax imposed herein applies to the following types of services:

. . . .

2. a. Except as provided in subd. 2. b., the sale of admissions to amusement, athletic, entertainment or recreational events or places except county fairs, the sale, rental or use of regular bingo cards, extra regular cards, special bingo cards and the sale of bingo supplies to players and the furnishing, for dues, fees or other considerations, the privilege of access to clubs or the privilege of having access to or the use of amusement, entertainment, athletic or recreational devices or facilities, including the sale or furnishing of use of recreational facilities on a periodic basis or other recreational rights, including but not limited to membership rights, vacation services and club memberships.

b. Taxable sales do not include the sale of admissions by a gun· club, including the sale of a gun club membership, if the gun club is a nonprofit organization and if the gun club provides safety classes to at least 25 individuals in the calendar year.

reational events under Wis. Stat. § 77.52(2)(a)2.[3] After the Department denied MSO's petition for redetermination, MSO filed a petition for review by the Tax Appeals Commission.

¶ 5.   Before the commission, MSO and the Department agreed that under Wis. Stat. § 77.52(2)(a)2. the event must be *primarily* "amusement, athletic, entertainment or recreational," agreed that "primarily" means more than 50%, and agreed that reliance on dictionary definitions was appropriate. After making detailed findings of fact, the commission concluded that MSO's concerts were properly characterized as entertainment events for purposes of imposing sales tax under § 77.52(2)(a)2.

¶ 6.   In construing the statute, the commission looked to the dictionary definitions of "entertainment" that it had applied in two prior cases:   "something diverting or engaging:   as a public performance," *Milwaukee Repertory Theater v. DOR* (*Milwaukee Rep*), Wis. Tax Rptr. (CCH) 400–515 (WTAC 2000), and "relat[ing] to the passing of time in a pleasant and agreeable manner," *Historic Sites Foundation v. DOR*, Wis. Tax Rptr. (CCH) 202–662 (WTAC 1986). The commission noted that the parties relied on the definition from *Milwaukee Rep* and additional dictionary definitions that, in it's view, were "in a similar vein." The commission concluded that under both definitions from its prior cases MSO's concerts constituted entertainment.

¶ 7.   The commission rejected MSO's argument that the concerts were not *primarily* entertainment

---

[3] The Department also made an additional assessment totaling $39,397.87 in tax and interest as of December 2, 1997, which is not at issue.

because they were *primarily* educational or, in the alternative, *primarily* charitable. The commission also rejected MSO's arguments that it should either distinguish or overrule *Milwaukee Rep*, in which the commission decided that the sales of tickets to performances of the Milwaukee Repertory Theater were taxable under WIS. STAT. § 77.52(2)(a)2. because the events were amusement or entertainment events. The commission reaffirmed *Milwaukee Rep* and concluded it was controlling in this case.

¶ 8. The commission also addressed MSO's argument that the commission should disregard the Department's rule, WIS. ADMIN. CODE § Tax 11.65 (Sept. 2006),[4] on which the Department had relied in addition to the statute.[5] The commission concluded that the rule was not inconsistent with WIS. STAT. § 77.52(2)(a)2. and the Department had not in the past applied it in an

---

[4] All references to the Wisconsin Administrative Code are to the September 2006 version unless otherwise noted.

[5] WISCONSIN ADMIN. CODE § Tax 11.65 provides in part:

(1) TAXABLE SALES. (a) The sale of admissions to amusement, athletic, entertainment or recreational events or places . . . . This includes admissions to movies, ballets, musical and dance performances, ball games, campgrounds, circuses, carnivals, plays, hockey games, ice shows, fairs, snowmobile and automobile races, and pleasure tours or cruises.

. . . .

(2) NONTAXABLE SALES. The following are nontaxable admissions:

. . . .

(b) Admissions to museums of history, art or science, and to auto or trade shows, if professional entertainment is not provided at the show. Also, all admission fees to any museum operated by a nonprofit corporation under a lease agreement with the state historical society, such as the circus world museum.

inconsistent or arbitrary manner. However, the commission stated, even if it did not consider the rule, under the statute itself the ticket sales were taxable.

¶ 9. MSO sought judicial review of the commission's decision. The circuit court, giving due weight deference to the decision, concluded that the commission erred in basing its decision on a distinction between education and entertainment, because Wis. Stat. § 77.52(2)(a)2. does not use the terms "educational" or "non-educational." The court remanded the matter to the commission to allow it to develop a standard for determining whether an event is "entertainment" within the meaning of § 77.52(2)(a)2. and to apply it to the evidence.

## DISCUSSION

¶ 10. MSO appeals the circuit court's decision, contending that a remand is unnecessary. Its primary contention is that Wis. Stat. § 77.52(2)(a)2. is unambiguous and plainly does not apply to MSO's ticket sales because the concerts are primarily educational or charitable. In the alternative, MSO asserts, if the statute is ambiguous then it must be construed in favor of MSO, the taxpayer. The Department cross-appeals, also challenging the court's remand order. The Department's position is that the statute is not ambiguous as applied to symphony concerts, which are plainly taxable as entertainment under the common meaning applied by the commission. Although the parties also dispute the commission's interpretation and application of the rule, we find it unnecessary to address that issue for reasons we explain in paragraph 30, *infra*.

¶ 11. We review the commission's decision, not that of the circuit court. *See DOR v. Menasha Corp.*, 2008 WI 88, ¶ 46, 311 Wis. 2d 579, 754 N.W.2d 95.

¶ 12. MSO is not challenging the commissions findings of fact, and there appears to be no dispute over the facts. Rather, the dispute is over the interpretation and application of WIS. STAT. § 77.52(2)(a)2. to an undisputed set of facts. More specifically, as we explain below, the crux of the dispute is the proper application of the statutory language to the facts, rather than the meaning given to that language.

¶ 13. The interpretation of a statute and its application to a given set of facts presents a question of law, which we generally review de novo. *Menasha Corp.*, 311 Wis. 2d 579, ¶ 44. However, when we review an administrative agency's decision that involves the interpretation of a statute and its application to a given set of facts, we may choose to apply one of three levels of review: great weight deference, due weight deference, or de novo review. *Id.*, ¶ 47.

¶ 14. We give great weight deference when the following conditions are met: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is one of long standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *Id.*, ¶ 48. When we give great weight deference, we sustain a reasonable agency conclusion even if an alternative conclusion is more reasonable. *Id.*

270

¶ 15. We give due weight deference when the agency has some experience in an area, but has not developed the expertise that necessarily places it in a better position to make judgments regarding the interpretation or application of the statute than a court. *Id.*, ¶ 49. When we give due weight deference, we sustain an agency's reasonable conclusion if it is not contrary to the plain meaning of the statute and we determine there is not a more reasonable interpretation or application. *Id.*

¶ 16. De novo review, that is, giving no deference to the agency's legal conclusion, is appropriate in any of the following circumstances: (1) the issue before the agency is clearly one of first impression; (2) a legal question is presented and there is no evidence of any special agency expertise or experience; or (3) the agency's position on an issue has been so inconsistent that it provides no real guidance. *Id.*, ¶ 50.

¶ 17. The Department contends that the criteria for great weight deference are met, while MSO asserts we should apply a de novo standard because, according to MSO, the commissions expertise in interpreting and applying Wis. Stat. § 77.52(2)(a)2. is limited to three prior inconsistent decisions: *Historic Sites Foundation, Experimental Aircraft Ass'n v. DOR*, Wis. Tax. Rptr. (CCH) 202–672 (WTAC 1986), *aff'd in part, rev'd in part,* Wis. Tax Rptr. (CCH) 202–802 (Dane County Cir. Ct. 1986), and *Milwaukee Rep*.

¶ 18. We conclude that due weight deference is appropriate in this case. The legislature has designated the commission as the final authority, subject to judicial review, on all questions of law and fact arising from a

decision of the Department. WIS. STAT. § 73.01(4). In addition, the commission has considered the application of WIS. STAT. § 77.52(2)(a)2. in the three prior cases cited by MSO, one of which, *Milwaukee Rep*, is factually similar to this case and was relied on by the commission in deciding this case. While these three prior cases may not provide the type of long-standing interpretation and application of the statute that would support great weight deference, we do not view them as so inconsistent as to warrant de novo review. *Experimental Aircraft*, in which the commission concluded that admission fees to public areas of the association's annual "fly-in" were not taxable, contained a number of specific factual findings but no memorandum opinion; it therefore does not easily lend itself to application in another case unless the facts are similar.[6] However, *Historic Sites Foundation* and *Milwaukee Rep* do provide some guidance for this case and the apparent inconsistencies are reconcilable when considered in the context of the arguments raised in each case.

¶ 19. In *Historic Sites Foundation*, the Department argued that the sale of admissions to the Circus World Museum was taxable under WIS. STAT. § 77.52(2)(a)2. if the museum had as *an* objective the supplying of amusement or entertainment even if that was not the *primary* objective. Wis. Tax Rptr. (CCH) 202–662 at 12,796 (WTAC 1986). The taxpayer argued that a primary objective should be required. *Id.* The commission adopted the standard advocated by the

---

[6] The public area in *Experimental Aircraft Ass'n v. DOR*, Wis. Tax Rptr. (CCH) 202–672 (WTAC 1986), *aff'd in part, rev'd in part*, Wis. Tax Rptr. (CCH) 202–802 (Dane County Cir. Ct. 1986), included activities such as films, exhibitions, workshops, and a "mini-museum" on various aspects of aviation. Wis. Tax Rptr. (CCH) 202–672 at 12,826–27.

taxpayer and concluded the sale of admissions was not taxable. *Id.* The question of how to determine the "primary objective" was apparently not raised in that case.

¶ 20. In *Milwaukee Rep*, the taxpayer relied on evidence of the *producer's* objective in arguing that the primary objective of the theater performances was educational. Wis. Tax Rptr. (CCH) 400–515 at 31,982 (WTAC 2000). The commission concluded that other evidence—the marketing and advertising evidence as well as the objective of the attending public—established that the performances were amusement or entertainment events. *Id.*

¶ 21. In this case MSO argued to the commission that in *Milwaukee Rep* the commission deviated from *Historic Sites Foundation* and *Experimental Aircraft* because it did not consider the sponsor's objective in *Milwaukee Rep* while that was the only factor considered in the other two cases. In its decision, the commission explained why this was not a correct reading of the three prior cases. The sponsor's objective was not irrelevant in *Milwaukee Rep*, the commission stated. Rather, it was one factor to consider along with the nature of the event itself and the audience's motivation, and the evidence on the latter two factors was more persuasive. The commission also explained that the sponsor's objective was not the only factor considered in *Experimental Aircraft* and *Historic Sites Foundation,* pointing to the factual findings in the former and the findings and discussion in the latter that addressed the nature of the event itself. This is a reasonable and coherent reading of the three prior decisions.

██

¶ 22. Applying due weight deference to the commission's decision that MSO's symphony perfor-

mances are entertainment within the meaning of Wɪs. Stat. § 77.52(2)(a)2., we conclude it is reasonable, not contrary to the plain meaning of the statute, and that another conclusion is not more reasonable.

¶ 23. We address first the commission's interpretation of the statutory language "entertainment events." Consistent with the parties' agreement, the commission interpreted "entertainment" to mean "something diverting or engaging" or "relat[ing] to the passing of time in an agreeable and pleasant manner" and interpreted an "entertainment event" to be an event that is primarily, that is, more than 50%, entertainment. We do not understand MSO to challenge this interpretation of the phrase but, for purposes of clarity, we confirm that it is a reasonable interpretation of the phrase, it is not contrary to the plain meaning of the statute, and there is not another meaning that is more reasonable. Courts typically use a dictionary to establish the common meaning of a word and neither party suggests there is a more reasonable common meaning of "entertainment."[7]

¶ 24. As for the "primarily" or over 50% requirement, Wɪs. Stat. § 77.52(2)(a)2. does not specify the degree to which an event must be "entertainment" in order to be taxable. (The same is true for "amusement," "athletic," and "recreational" events.) Assuming without deciding that it is reasonable to read the statute to tax

[7] Use of a dictionary to establish the common meaning of a word does not mean the statute is ambiguous. *State v. Sample*, 215 Wis. 2d 487, 499–500, 573 N.W.2d 187 (1998). Rather, the beginning point of every statutory analysis is to give words their common meaning, unless a technical definition is indicated, *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, 45–48, 271 Wis. 2d 633, 681 N.W.2d 110, and a dictionary may be used to establish the common meaning. *Sample*, 215 Wis. 2d at 499.

events that have *any* component of entertainment (or the other three categories), it is more reasonable to read the statute as describing the primary characteristic of the event to be taxed. This is the reading more favorable to the taxpayer.[8] *See DOR v. River City Refuse Removal*, 2007 WI 27, ¶ 31, 299 Wis. 2d 561, 729 N.W.2d. 396 (ambiguities in a tax imposition statute are resolved in favor of the taxpayer). The further refinement that "primarily" means "over 50%" reasonably clarifies "primarily" and we see no other numerical equivalent to "primarily" that is more reasonable.

¶ 25.   We next consider the commission's application of the statutory language, thus interpreted, to the facts in this case. The commission considered extensive evidence, including:   MSO's prior and current mission statements, its federal and state income tax status,[9] its

---

[8] This interpretation of the statute is also consistent with the commission's rejection of the Department's position in *Historic Sites Foundation v. DOR*, Wis. Tax Rptr. (CCH) 202–662 (WTAC 1986), that the museum admissions were taxable if the museum had as *an* objective the supplying of amusement or entertainment, even if it was not the *primary* objective. And it is consistent with the analysis in *Milwaukee Repertory Theater v. DOR (Milwaukee Rep)*, which recognized that, although there might be evidence that the producer's primary objective was educational, the "overriding thrust of its advertising and promotion of the shows, as well as the obvious objective of the public who responded by buying tickets, was 'entertainment,' 'amusement,' and/or 'recreation' as those terms are commonly understood and defined." Wis. Tax Rptr. (CCH) 400–515 at 31,982 (WTAC 2000).

[9] The commission found that MSO is an organization exempt from federal income tax under 26 U.S.C. § 501(c)(3) (2006), with the IRS approval of its application stating that "it is shown that you are organized and operated exclusively for educational purposes." The commission also found that, because

financial operations and business plan, the number and types of concerts performed each year, the audiences who attended the various types of concerts, advertising and marketing, formal surveys of concertgoers elsewhere and informal surveys and comments of MSO concert attendees. The commission's conclusion that the concert performances were primarily entertainment is a reasonable one based on the record. The commission recognized that learning and an aesthetic experience was a component of attending the concerts for many, that the music was artistically excellent, and that MSO's current mission statement and certain activities were directed at educating the public on the music so as to develop greater appreciation of it. However, there was also much evidence that MSO and the attendees viewed the concerts as a form of entertainment and the commission was reasonably persuaded that this was the primary characteristic of the event—from the audiences' standpoint, from the marketing and advertising of MSO, and from the nature of the concerts themselves.

¶ 26. MSO points to evidence that, it contends, establishes that the concerts are primarily educational and, thus, not primarily entertainment.[10] The commis-

MSO is not organized or conducted as a corporation for pecuniary profit, pursuant to WIS. STAT. § 71.26(1)(a) it is not subject to Wisconsin income/franchise tax, except for its unrelated business income.

[10] As we read the commission's decision, it did not define "entertainment," or any other statutory phrase, with reference to "educational or "non-educational." Rather, the commission expressly recognized that the statute did not create an exception for entertainment events that are primarily educational but understood that MSO's position was that, if an event was primarily (more than 50%) educational, it could not be prima-

sion carefully considered this evidence—primarily the testimony of MSO's expert witness. The commission correctly observed that it was not obligated to accept this expert's opinion on the ultimate legal conclusion before it. The commission concluded that, while the expert's testimony on certain of the music performed indeed pertained to education, without evidence that this information was presented at the concerts, his analysis of the music did not make the concerts educational. The commission also considered the evidence of the optional pre-concert and post-concert lectures for some concerts and the written materials offered to concertgoers regarding the music performed at some concerts. It concluded that these ways of providing information about the music did not transform the concerts into primarily educational events. We are satisfied that these conclusions are reasonable because they are based on the evidence and focus on the concerts themselves, which are the events for which the tickets are sold. We are also satisfied that it is not more reasonable to conclude that an expert's analysis of the music, taken together with the educational materials regarding the music made available to the concertgoers, make the concerts themselves primarily educational events.

¶ 27. MSO also contends that its concerts are primarily charitable events because they "advance[e] public welfare or lessen . . . the burdens of government," and therefore they are not primarily entertain-

---

rily entertainment. We therefore do not agree with the circuit court that the commission improperly imported a distinction between education and entertainment into the statute. Simply put, if an event is primarily educational, it is not primarily entertainment (or amusement or athletic or recreational) within the meaning of WIS. STAT. § 77.52(2)(a)2.

ment.[11] The commission concluded the concerts were not charitable events in this sense because they were not something that would ordinarily be provided by government, and that, even if the purpose of an event were charitable, this in itself did not preclude the event from coming within one of the categories of events taxable under WIS. STAT. § 77.52(2)(a)2. The commission also rejected MSO's argument based on a Texas case in which the court concluded that an orchestra was a "charitable" organization for property tax purposes. That case, the commission stated, did not address a sales tax on entertainment events and it analyzed the purpose of the organization, not the purpose of the concerts.

---

[11] As the source for this definition of "charitable," MSO cites 26 C.F.R. § 1.501(c)(3)-1(d)(2) (2008), which defines "charitable" for purposes of federal income tax exemptions for organizations under 26 U.S.C. § 501(c)(3). The regulation provides in relevant part:

> Such term includes: relief of the poor and distressed or of the underprivileged; advancement of religion; advancement of education or science; erection or maintenance of public buildings, monuments, or works; *lessening of the burdens of Government; and promotion of social welfare by organizations designed to accomplish any of the above purposes* . . . .

(Emphasis added.)

Before the commission, MSO apparently did not cite this regulation as the source for its definition of "charitable," but, instead, cited *Kickers of Wisconsin, Inc. v. City of Milwaukee,* 197 Wis. 2d 675, 541 N.W.2d 193 (Ct. App. 1995). In that case, in the context of deciding that a youth soccer organization was not an educational association and, thus, not entitled to a property tax exemption under WIS. STAT. § 70.11(4), we stated that the youth soccer organization did not meet "the requirement that it offer educational activity that 'benefits the general public directly and . . . in some way lessen[s] the burdens of government.' " *Id.* at 684 n.4 (citation omitted).

278

¶ 28.  On appeal MSO challenges the commission's conclusion that its concerts are not primarily charitable by referring to a report recognizing the arts as a community responsibility.[12] The Department responds that the report was not presented to the commission, and MSO does not dispute this in its reply brief. MSO also refers to the government support given non-profit performing arts organizations through the tax-deductible nature of contributions and through direct government grants.  These arguments are summarily presented and do not explain what is unreasonable about the commission's decision or what is more reasonable about MSO's position. MSO does not tie its assertions about the charitable nature of the concerts to the evidence presented to the commission and, more importantly, does not develop an argument that explains why the charitable purpose of the organization or the organization's tax status under other statutes precludes taxing the receipts from concert admissions under WIS. STAT. § 77.52(2)(a)2.

¶ 29.  Based on the evidence presented to the commission and the limited nature of MSO's arguments, we conclude as follows. The commission reasonably decided that MSO's concerts are not charitable under the definition MSO provided, notwithstanding the importance of the performing arts to communities. The commission also reasonably decided that neither the charitable purpose of a concert nor the fact that an organization is considered "charitable" for other tax purposes precludes a concert from being considered primarily an entertainment event and therefore taxable

---

[12] MSO's citation to the report is:  Rockefeller Panel Report, McGraw-Hill Book Company (1965).

under Wis. Stat. § 77.52(2)(a)2. Finally, the contrary positions MSO advocates are not more reasonable.

¶ 30. In summary, the commission's decision that MSO's concerts are primarily entertainment events under Wis. Stat. § 77.52(2)(a)2. is a reasonable one and the contrary conclusion advocated by MSO is not more reasonable. Because the commission concluded that the statute provided a basis for its decision independent from Wis. Admin. Code § Tax 11.65, we need not address the parties' dispute regarding the rule in order to affirm the commission's decision under the statute. *Cf. Menasha Corp.*, 311 Wis. 2d 579, 25–35, ¶ 52 (the commission's statutory interpretation was dependent upon its interpretation of the department's rule, thus necessitating a review of the commission's interpretation and application of the rule).

## CONCLUSION

¶ 31. Applying due weight deference to the commission's decision, we conclude it properly interpreted and applied Wis. Stat. § 77.52(2)(a)2. in deciding that MSO's concerts are primarily entertainment events. Accordingly, we reverse the circuit court's decision ordering a remand to the commission and direct the circuit court to enter an order affirming the commission's decision.

*By the Court.*—Judgment reversed and cause remanded with directions.