MILWAUKEE SYMPHONY ORCHESTRA, INC.,
Petitioner-Appellant-Cross-Respondent-Petitioner,

v.

WISCONSIN DEPARTMENT OF REVENUE,
Respondent-Respondent-Cross-Appellant.

Supreme Court

*No. 2008AP1684. Oral argument December 2, 2009.
—Decided May 5, 2010.*

2010 WI 33

(Also reported in 781 N.W.2d 674.)

72

For the petitioner-appellant-cross-respondent-petitioner there were briefs by *Robert A. Schnur, Timothy G. Schally, Sarah L. Fowles,* and *Michael Best & Friedrich LLP,* Madison, and oral argument by *Robert A. Schnur.*

For the respondent-respondent-cross-appellant the cause was argued by *F. Thomas Creeron III,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published decision of the court of appeals reversing a judgment of the Circuit Court for Dane County, Maryann Sumi, Judge, and remanding the cause to the circuit court to enter an order affirming the decision of the Tax Appeals Commission.[1]

¶ 2. The issue before the court is whether the sales of admissions to concerts performed by the Milwaukee Symphony Orchestra are subject to Wis. Stat. § 77.52(2)(a)2. (1995–96)[2] imposing a five percent sales tax on gross receipts of the "the sale of admissions to amusement, . . . entertainment or recreational events or places . . . ."

---

[1] *Milwaukee Symphony Orchestra, Inc. v. DOR,* 2009 WI App 69, 318 Wis. 2d 261, 767 N.W.2d 360.

[2] All references to the Wisconsin statutes are to the 1995–96 version unless otherwise indicated. The relevant tax years for this case are 1992–96. The controlling statutory language now codified in Wis. Stat. § 77.52(2)(a)2.a. (2007–08) has not changed.

¶ 3. The Wisconsin Tax Appeals Commission held that the sales of admissions to Milwaukee Symphony Orchestra concerts were subject to the sales tax under Wis. Stat. § 77.52(2)(a)2. because the concerts were primarily entertainment events. It separately concluded that the ticket sales to the Milwaukee Symphony Orchestra concerts were taxable as "admissions to musical performances" under Wis. Admin. Code § Tax 11.65(1)(a).[3]

¶ 4. The circuit court concluded that the Commission had erred in basing its decision on taxation on a distinction between education and entertainment when Wis. Stat. § 77.52(2)(a)2. does not use the word "education." The circuit court declared the Commission's creation and application of an exception from taxation for educational activities an unreasonable interpretation of § 77.52(2)(a)2. and remanded the cause to the Commission. The circuit court stated that the Commission would be free to conclude that the Milwaukee Symphony Orchestra's concerts are taxable entertainment events, but not by applying an educational test that has no basis in the statute.

¶ 5. The court of appeals reversed the judgment of the circuit court. The court of appeals gave the Commission's interpretation and application of the statute due weight deference and held that the Commission's interpretation of the statute is reasonable and that no more reasonable interpretation was available. The court of appeals therefore affirmed the Commission's holding that the ticket sales to the Milwaukee Symphony Orchestra concerts were sales of

[3] This section of the tax code has been in effect since 1978 with no changes relevant to the issues in this case.

admissions to "entertainment events" under Wis. Stat. § 77.52(2)(a)2. and subject to sales tax.

¶ 6. We affirm the decision of the court of appeals. We too give the Commission's interpretation and application of the statute due weight deference and conclude that the Commission reasonably interpreted and applied Wis. Stat. § 77.52(2)(a)2. We therefore conclude that the sales of admission to the Milwaukee Symphony Orchestra concerts were sales of admission to "entertainment events" under Wis. Stat. § 77.52(2)(a)2. and are subject to sales tax.

¶ 7. Because the Commission concluded that the statute provided a basis for its decision independent from Wis. Admin. Code § Tax 11.65, we need not address the parties' dispute regarding the rule in order to review the Commission's decision under the statute. We agree with this approach taken by the court of appeals. Any review of § Tax 11.65 would not change the result of this case.

I

¶ 8. The dispute here is over the interpretation and application of Wis. Stat. § 77.52(2)(a)2. to undisputed facts. The Commission made 137 Findings of Fact and the Milwaukee Symphony Orchestra does not take issue with them. The Milwaukee Symphony Orchestra's position is that the facts do not lead to the Commission's conclusion that the concerts are entertainment events under the sales tax law.

¶ 9. In 1997, the Wisconsin Department of Revenue initiated a field audit of the Milwaukee Symphony Orchestra for the period from September 1, 1992 through August 31, 1996. Unless otherwise noted, we describe and analyze the facts established for that time period.

¶ 10. The Milwaukee Symphony Orchestra is a full-time, professional symphony orchestra. During the relevant time period, the Milwaukee Symphony Orchestra employed approximately 90 musicians. The beginning salary of the musicians was approximately $50,000 per year, and the musicians were unionized as Milwaukee Musicians Association, Local 8, of the American Federation of Musicians. Most of the musicians had advanced college or conservatory degrees in music, and for most, their income from the Milwaukee Symphony Orchestra was the principal source of income for their families. In addition, the Milwaukee Symphony Orchestra employed 40 or more non-musicians in full-time administrative and management staff positions. The Milwaukee Symphony Orchestra was managed by a board of directors consisting of from 40 to 60 members.

¶ 11. The Milwaukee Symphony Orchestra has been incorporated as a not-for-profit corporation. It is exempt from federal income tax under § 501(c)(3) of the Internal Revenue Code as an organization operated exclusively for educational purposes. The Milwaukee Symphony Orchestra's Articles of Incorporation, as restated in 1988, state an educational purpose:

> The purposes for which the Corporation is organized are educational, to present classical and other orchestral music, performed with the highest degree of artistic excellence, to promote and develop public appreciation of and to educate the public in such music, and to engage in any other lawful activity within the purposes for which corporations may be organized under Chapter 181 of the Wisconsin statutes.

¶ 12. During each year of the audit period, the Milwaukee Symphony Orchestra's total operating revenues consisted almost entirely of ticket sales to its concerts, and revenues were always less than the over-

all expenses for those concerts. Even if the Milwaukee Symphony Orchestra sold every ticket to every concert, overall operating revenues would be substantially less than overall expenses; each concert would result in a financial loss. These expected operating deficits were offset by charitable contributions and government grants. In some years the Milwaukee Symphony Orchestra had an overall deficit even after contributions.

¶ 13. The Milwaukee Symphony Orchestra presented 100 to 150 concerts per year. Most were presented in Milwaukee but some were elsewhere in Wisconsin and outside the state. This case involves only those concerts presented in Wisconsin for which the Milwaukee Symphony Orchestra sold tickets to the public. Ticket prices varied from one concert to another and changed each year. The Milwaukee Symphony Orchestra set its ticket prices generally lower than those for commercial concerts to broaden the Milwaukee Symphony Orchestra's audiences. The Milwaukee Symphony Orchestra offered discounts to full-time students and educators, children, senior citizens, and others.

¶ 14. There were primarily three categories of concerts: (1) Classical concerts; (2) Pops concerts; and (3) Youth concerts. The Milwaukee Symphony Orchestra also performed some special concerts on dates such as Christmas, Fourth of July, and New Year's.

¶ 15. The Classical concerts primarily included works from the traditional classical repertoire. The Milwaukee Symphony Orchestra also regularly commissioned original works to perform at its concerts. Works were selected for the Classical concerts, according to the Milwaukee Symphony Orchestra, by "balancing [the Milwaukee Symphony Orchestra]'s educational mission and primary purpose; the likely interest of its patrons . . . and budget considerations."

78

¶ 16.   Most Classical concerts were preceded by free previews or talks in which a conductor, musician, or other expert discussed the music to be performed. The Milwaukee Symphony Orchestra also offered post-concert talks for approximately one quarter of the Classical concerts.

¶ 17.   Persons attending the Classical concerts received the Milwaukee Symphony Orchestra's program book, *Encore,* which contained advertising as well as feature stories about the Milwaukee Symphony Orchestra; glossaries of music terms and discussions of particular types of music and instruments; profiles of guest artists; and program notes about the music to be performed, sometimes including explanations from the composer as to the content of the music and what the music was intended to convey.

¶ 18.   By the Milwaukee Symphony Orchestra's own estimation, attendance at discussions preceding Classics Series concerts averaged approximately 200, while average attendance for the concerts themselves was over 1,600. At Pops concerts no pre- or post-concert discussions were offered, and concert attendance averaged over 1,800.

¶ 19.   Pops concerts featured "lighter music, mixing orchestral pieces with lighter, usually American music," typically performed in full symphony orchestra format. The Milwaukee Symphony Orchestra used its Pops concerts as outreach to encourage new ticket purchases and conceded that some Pops concerts did not represent its primary mission.[4]

---

[4] *Milwaukee Symphony Orchestra v. DOR,* Docket No. 98–S-130, slip op. at 20–21 (WTAC Dec. 15, 2006) (Findings of Fact Nos. 70, 74).

¶ 20. The Youth concerts included concerts in three series, each aimed at a different age group including High School concerts, "Middle School" concerts (aimed at children in grades 3 through 8, each targeting a pair of these grade levels), and "Kinderkonzerts," directed at children ages 3 to 8.

¶ 21. The Milwaukee Symphony Orchestra used its Youth concerts partly to develop future classical audiences. The Milwaukee Symphony Orchestra collected sales tax on its ticket sales for these Youth concerts prior to making its refund claim. The Milwaukee Symphony Orchestra did not take any resale exemption certificates or purchase orders from the schools, since individual students, rather than the schools, paid for the tickets.

¶ 22. High School and Middle School concerts were normally performed in the Milwaukee Symphony Orchestra's regular concert halls with the full symphony orchestra rather than in schools. The concert programs included works from the traditional classical repertoire, connected to an overall theme appropriate for the targeted age group. For example, in 1994–96 the Milwaukee Symphony Orchestra presented a series of High School concerts themed "American History Through Music," which focused on United States history through the development of music and the humanities.

¶ 23. High School and Middle School concerts were designed to introduce students to symphonic music, and the Milwaukee Symphony Orchestra prepared teaching materials and program guides for teachers whose classes would be attending the concerts. These materials included some explanations about the orchestra, background materials on the composers, suggestions of what to listen for, questions for thought

and discussion, and other explanatory materials. These materials were available to teachers before the concerts. Any pre-concert teaching activities were done by school teachers, not by Milwaukee Symphony Orchestra staff. Use of the materials was not a pre-requisite to attending the concerts.

¶ 24. The Kinderkonzerts, designed to introduce children to classical music, were generally presented at the Marcus Center for the Performing Arts. Kinderkonzerts consisted mainly of works from the classical repertoire appropriate for young children, but many popular children's songs were also performed. Each Kinderkonzert was organized around a theme and conducted in an interactive talk and play format. The Kinderkonzerts also featured many other pre-concert activities, such as a "Petting Zoo" (allowing children onstage to touch instruments), persons dressed as children's characters, clowns, dancers, and coloring contests.

¶ 25. Families that subscribed to the Kinderkonzerts received materials with descriptions of the music, composers, and instruments, and suggested activities for parents and children.

¶ 26. The Milwaukee Symphony Orchestra does not argue that any of these Youth concerts might be distinguished from the Classical concerts as primarily educational rather than as primarily entertainment. Rather, the Milwaukee Symphony Orchestra has chosen to argue before the Commission and the court that all of its concerts are primarily educational and not primarily entertainment. The Milwaukee Symphony Orchestra's brief stated, in relation to the Pops concerts, that "there is no practical method of separating these from the other concerts" because "many Pops offerings consist entirely or mainly of traditional clas-

sical works and most Pops tickets are sold in series."[5] Because the Milwaukee Symphony Orchestra relies on the nature of the music itself as presenting primarily educational content, distinctions between the concert series are not supported. The record is not adequate for the Commission or the court to distinguish the Youth concerts and treat the admission sales for Youth concerts as primarily educational and not subject to the sales tax.

¶ 27.    After the Department of Revenue initiated its field audit, the Milwaukee Symphony Orchestra filed amended sales tax returns for the audit period. The Milwaukee Symphony Orchestra's amended tax returns claimed a refund of $719,456.69 for sales tax that it had previously paid, including tax on all admission sales.

¶ 28.    The Department acted on the Milwaukee Symphony Orchestra's refund claim together with its field audit assessment. The Department granted a portion of the Milwaukee Symphony Orchestra's refund claim in the amount of $585.36 in sales tax but denied the remainder.[6]

¶ 29.    In 1998, the Milwaukee Symphony Orchestra sought the Commission's review of the Department's decision. The Commission held the case in abeyance, awaiting the decision in *Milwaukee Repertory Theater v. Wisconsin Department of Revenue (Milwaukee Rep)*, Docket No. 97–S-330, Wis. Tax Rptr. (CCH) ¶ 400–515

---

[5] Brief    and    Appendix    of    Petitioner-Appellant-Cross-Respondent-Petitioner (Milwaukee Symphony Orchestra) at 46 & n.138.

[6] The Department of Revenue assessed the Milwaukee Symphony Orchestra an amount of $39,397.87 in tax and interest. The Milwaukee Symphony Orchestra does not contest the calculation of the amount; it agreed that if the gross receipts from its ticket sales are taxable, the Department's assessment, plus applicable interest, is correct.

(WTAC 2000). The Commission conducted a four-day contested case hearing in the present case on May 4–7, 2004, and issued its Decision and Order on December 16, 2006.

## II

¶ 30. We review the decision of the Commission, rather than the judgment of the circuit court or the decision of the court of appeals, although we benefit from the analysis of those courts.[7]

¶ 31. We review an agency's findings of fact by applying a "substantial evidence" standard, affording significant deference to the agency's findings. Substantial evidence does not mean a preponderance of evidence. It means whether, after considering all the evidence of record, reasonable minds could arrive at the conclusion reached by the trier of fact.[8] "[T]he weight and credibility of the evidence are for the agency, not the reviewing court, to determine."[9] An agency's findings of fact may be set aside only when a reasonable

---

[7] *DOR v. Menasha Corp.*, 2008 WI 88, ¶ 46, 311 Wis. 2d 579, 754 N.W.2d 95; *Racine Harley-Davidson, Inc. v. Wis. Div. of Hearings & Appeals*, 2006 WI 86, ¶ 8 n.4, 292 Wis. 2d 549, 717 N.W.2d 184.

"An adverse decision of the tax appeals commission is subject to review in the manner provided in ch. 227," Wis. Stat. § 73.015(2), before the circuit court for Dane County, Wis. Stat. § 77.59(6)(b).

[8] *Hilton ex rel. Pages Homeowners' Ass'n v. DNR*, 2006 WI 84, ¶¶ 16, 25, 293 Wis. 2d 1, 717 N.W.2d 166 (quoted source omitted).

[9] *Hilton,* 293 Wis. 2d 1, ¶ 25.

trier of fact could not have reached them from all the evidence before it, including the available inferences from that evidence.[10]

■■

¶ 32. In contrast, an agency's "interpretation and application of a statute is a question of law to be determined by a court."[11] A reviewing court may, however, give deference to an agency's interpretation of a statute.

■

¶ 33. Granting deference on review of an agency's determination of law recognizes the comparative institutional qualifications and capabilities of the courts and the agency.[12] Granting deference to an agency's statutory interpretation does not abdicate the court's own authority and responsibility to interpret statutes. Even when granting deference to an agency's statutory interpretation, the court does not accept the agency's interpretation without a critical eye. The court itself must interpret the statute to determine whether the agency's interpretation is reasonable; only reasonable agency interpretations are given any deference.[13]

■

¶ 34. Our case law has established three levels of deference to be granted to agency interpretations, depending on the circumstances: "great weight," "due weight," or "no deference."[14]

---

[10] *Hilton*, 293 Wis. 2d 1, ¶¶ 16, 25.
[11] *Racine Harley-Davidson*, 292 Wis. 2d 549, ¶ 14.
[12] *Id.*
[13] *Id.*, ¶ 15.
[14] *Id.*, ¶ 11.

¶ 35. "Great weight" deference is warranted when (1) the agency is charged by the legislature with administering the statute in question; (2) the agency interpretation is of long standing; (3) the agency employed its specialized knowledge or expertise in interpreting the statute; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. When courts apply "great weight" deference, an agency's reasonable statutory interpretation will be sustained even if the court concludes that another interpretation is equally reasonable or even more reasonable.[15]

¶ 36. Courts give lesser, "due weight" deference when the agency is charged by the legislature with enforcement of the statute and has experience in the area, but has not developed expertise that necessarily places the agency in a better position than the court to interpret the statute. Courts applying "due weight" deference will sustain an agency's statutory interpretation if it is not contrary to the clear meaning of the statute and no more reasonable interpretation exists.[16] Applying "due weight" deference, a reviewing court will not set aside the agency's interpretation in favor of another equally reasonable interpretation, but will replace it with a more reasonable interpretation if one exists.[17]

¶ 37. Reviewing courts give no deference to an agency's statutory interpretation when any of the fol-

---

[15] *Id.*, ¶¶ 16–17.

[16] *Id.*, ¶ 18.

[17] *Id.*, ¶¶ 18, 20.

lowing conditions are met: (1) the issue presents a matter of first impression; (2) the agency has no experience or expertise relevant to the legal issue presented; or (3) the agency's position on the issue has been so inconsistent as to provide no real guidance.[18] A court giving no deference to an agency's interpretation of a statute benefits from the agency's analysis but interprets the statute independent of the agency's interpretation and in effect adopts an interpretation that the court determines the most reasonable interpretation.[19]

¶ 38.   Here, we give "due weight" deference to the Commission's interpretation of Wis. Stat. § 77.52(2)(a)2., as did the court of appeals and the circuit court. The Commission is charged with interpreting and administering the tax code and adjudicating taxpayer claims, Wis. Stat. § 73.01(4), and this is not the first case in which the Commission has utilized its expertise and experience to interpret Wis. Stat. § 77.52(2)(a)2. The Commission has interpreted the phrase "entertainment events and places" in three previous cases, which we shall discuss later, including one recent case with a fact situation substantially similar to the present case. The Commission's interpretation therefore warrants some deference.[20] "Great weight" deference would be inappropriate here, however, because the Commission's interpretation of "entertainment events and places" under Wis. Stat. § 77.52(2)(a)2. has evolved in the three cases over the last 20 years.[21]

---

[18] *Id.*, ¶ 19.

[19] *Id.*, ¶¶ 19, 20.

[20] *Id.*, ¶ 18.

[21] At the court of appeals, the Department argued for "great weight" deference in the instant case, but in its briefs here

¶ 39. We turn to the text of Wis. Stat. § 77.52(2)(a)2. and the Commission's interpretation and application of the statute to the undisputed facts.

### III

¶ 40. Wisconsin Stat. § 77.52(2)(a)2. imposes a sales tax on "the sale of admissions to amusement, athletic, entertainment or recreational events or places." The question posed in the instant case is whether Milwaukee Symphony Orchestra concerts were "entertainment events or places" under Wis. Stat. § 77.52(2)(a)2.

¶ 41. The applicable portions of Wis. Stat. § 77.52(2) are as follows (emphasis added):

> (2) For the privilege of selling, performing or furnishing the services described under par. (a) at retail in this state to consumers or users, *a tax is imposed upon all persons selling, performing or furnishing the services at the rate of 5% of the gross receipts* from the sale, performance or furnishing of the services.
>
> (a) The tax imposed herein applies to the following types of services:
>
> . . . .
>
> 2. *The sale of admissions to amusement, athletic, entertainment or recreational events or places,* the sale, rental or use of regular bingo cards, extra regular cards, special bingo cards and the sale of bingo supplies to players and the furnishing, for dues, fees or other considerations, the privilege of access to clubs or the privilege of having access to or the use of amusement, entertainment, athletic or recreational devices or facili-

argued for "at least due weight deference"; at oral argument the Department agreed that "due weight" deference was warranted.

ties, including, in connection with the sale or use of time-share property, as defined in s. 707.02 (32), the sale or furnishing of use of recreational facilities on a periodic basis or other recreational rights, including but not limited to membership rights, vacation services and club memberships.[22]

¶ 42.  The focus of our analysis is therefore on whether the Milwaukee Symphony Orchestra's concerts are "entertainment events" under the statute, as the Commission held them to be. The statute does not define the phrase "entertainment events or places."

¶ 43.  We review the Commission's interpretation and application of Wis. Stat. § 77.52(2)(a)2. under the due weight deference standard to determine whether interpreting the statute to apply to sales of tickets to Milwaukee Symphony Orchestra concerts is a reasonable interpretation and application of the statute or whether a more reasonable interpretation is available.

¶ 44.  We first examine the Commission's interpretation of the statute and then the Commission's application of its interpretation to the undisputed facts.

¶ 45.  The Commission has interpreted the phrase "entertainment event" in Wis. Stat. § 77.52(2)(a)2. to

---

[22] A separate provision provides tax exemptions that do not apply here.

Wisconsin Stat. § 77.54(9) exempts:

The gross receipts from sales of tickets or admissions to public and private elementary and secondary school activities, where the entire net proceeds therefrom are expended for educational, religious or charitable purposes.

Wisconsin Stat. § 77.54(9a)(f) exempts:

(9a) The gross receipts from sales *to* . . .

(f) any corporation, community chest fund, foundation or association organized and operated exclusively for religious, charitable, scientific or educational purposes . . . (emphasis added).

mean an event that is "primarily" entertaining. More specifically, the Commission has determined that "primarily" means more than 50 percent and that an event that is 50 percent or more entertainment is subject to sales tax under § 77.52(2)(a)2.

¶ 46. The Commission has developed this interpretation of the phrase "entertainment events" under Wis. Stat. § 77.52(2)(a)2. in three prior cases.

¶ 47. First, in 1986, the Commission decided in *Historic Sites Foundation v. Wisconsin Department of Revenue,* Docket No. S-10066, Wis. Tax Rptr. (CCH) ¶ 202–662, at 12,793 (WTAC Jan. 21, 1986), that sales of admissions to the Circus World Museum in Baraboo were not taxable under Wis. Stat. § 77.52(2)(a)2. because "the [Circus World Museum] was not a place of amusement, athletic events[,] entertainment or recreation . . . ."[23]

¶ 48. The *Historic Sites* case established two key principles that underlie the subsequent interpretation and application of Wis. Stat. § 77.52(2)(a)2.

¶ 49. One, the Commission adopted a "primary objective" test (later stated as the "primary purpose" test) for determining whether the event or place was "entertainment" for sales tax purposes. Recognizing that "many of the activities of the [Circus World Museum] are amusing and entertaining as well as educa-

---

[23] *Historic Sites Found. v. DOR,* Docket No. S-10066, Wis. Tax Rptr. (CCH) ¶ 202–662, at 12,795 (WTAC Jan. 21, 1986).

We note that since the Commission decided the *Historic Sites* case, admissions to the Circus World Museum have been made exempt from sales and use tax under ch. 77, subch. III of the Wisconsin Statutes. *See* Wis. Stat. § 77.54(10) (as amended by 85 Wis. Act 29, § 1490m); *see also* Wis. Admin Code § Tax 11.65(2)(b).

tional," the Commission rejected in *Historic Sites* the Department's argument that *any* entertaining aspect would make admissions taxable.[24] Instead, the Commission held that "the 'primary objective' interpretation of sec. 77.52(2)(a)2.[ ] should be utilized in considering the taxability of [the Museum's] admission fees."[25]

¶ 50. Two, the Commission formulated its analysis "in terms of the degree to which 'amusement' or 'entertainment,' *as opposed to 'education,'* is an objective of a place charging admission for entrance."[26] This analysis implied that if a place or event has "education" as its "primary objective," it cannot have "entertainment" as its primary objective.

¶ 51. Thus in *Historic Sites* the Commission made the meaning of "education," a word not appearing in the text of Wis. Stat. § 77.52(2)(a)2., a potentially dispositive factor in applying the statute. The Milwaukee Symphony Orchestra argues that their concerts are "educational" and therefore not "entertainment."

¶ 52. The second Commission case applying Wis. Stat. § 77.52(2)(a)2. involved the Experimental Aircraft Association.[27] In *Experimental Aircraft Association v. Wisconsin Department of Revenue,* Docket Nos. S-8921, S-8922, S-8923, Wis. Tax Rptr. (CCH) ¶ 202–802, at 12,823 (WTAC Jan. 21, 1986), the Commission made numerous findings of fact and then simply concluded as

---

[24] *Historic Sites,* Wis. Tax Rptr. (CCH) ¶ 202–662, at 12,793.

[25] *Id.*

[26] *Id.*

[27] *Experimental Aircraft Ass'n v. DOR,* Docket Nos. S-8921, S-8922, S-8923, Wis. Tax Rptr. (CCH) ¶ 202–802, at 12,823 (WTAC Jan. 21, 1986), *aff'd in part and rev'd in part on other grounds, DOR v. EAA Aviation Found.,* 143 Wis. 2d 681, 422 N.W.2d 458 (Ct. App. 1988).

a matter of law (without a memorandum decision) that the admission fees to the public area at the week-long Oshkosh Fly-In aviation event were not subject to sales tax. The Commission continued the analysis articulated in *Historic Sites,* finding as a fact that "[t]he primary purpose of the fly-in is to educate people about . . . aviation . . . rather than to provide a pleasurable or agreeable diversion."[28] On judicial review, the circuit court upheld the Commission's implicit "primary purpose" analysis, holding it "proper and necessary for the Commission to determine what level or degree of amusement, entertainment, or recreational value" the event has, and agreeing that "the primary purpose of the fly-in *is* to educate."[29]

¶ 53. The *Experimental Aircraft Association* case applied and extended the analysis of the "primary purpose" (or "primary objective") and the distinction between educational events and events that are primarily aimed at entertainment, amusement, or recreation.

¶ 54. The third Commission case, the most recent and the most directly relevant here, was the Commission's 2000 decision in *Milwaukee Repertory Theater, Inc. v. Wisconsin Department of Revenue* (*Milwaukee Rep*), Docket No. 97–S-330, Wis. Tax Rptr. (CCH) ¶ 400–515, at 31,979 (WTAC Dec. 15, 2000). The Commission determined that sales of admissions to the Milwaukee Repertory Theater's performances were sales of admissions to "amusement or entertainment events" subject to sales tax under Wis. Stat. § 77.52(2)(a)2. The

---

[28] *Id.* at 12,829.

[29] *DOR v. EAA Aviation Found.,* Wis. Tax Rptr. (CCH) ¶ 202–802 (Dane Co. Cir. Ct., Nos. 86CV882, 86CV891, Oct. 22, 1986) (emphasis in original).

Commission reaffirmed *Milwaukee Rep* in the present case and concluded that the *Milwaukee Rep* decision was controlling here.

¶ 55.   The Commission's decision in *Milwaukee Rep* distinguished the theater performances from the events at the Circus World Museum in *Historic Sites* and the fly-in event in *Experimental Aircraft Association.*

¶ 56.   The Commission rejected the argument that if the primary objective of the Milwaukee Repertory Theater was educational, sales of admissions to the performances were not taxable. Referring to the language of the statute, the Commission cited dictionary definitions of "entertainment," of "amuse" (as a synonym of "entertain"), and of "recreation," concluding that "[e]ven if education was [the Milwaukee Repertory Theater's] primary objective as producer of the shows, the overriding thrust of its advertising and promotion of the shows, as well as the obvious objective of the public who responded by buying the tickets, was 'entertainment,' 'amusement,' and/or 'recreation' as those terms are commonly understood and defined."[30]

¶ 57.   The Commission observed that "in spite of its worthy educational mission, [Milwaukee Repertory Theater] is a sophisticated non-profit mercantile enterprise . . . engaged in extensive commercial advertising and promotion of its performances."[31]

---

[30] *Milwaukee Repertory Theater, Inc. v. DOR* (*Milwaukee Rep*), Docket No. 97–S–330, Wis. Tax Rptr. (CCH) ¶ 400–515, at 31,982 (WTAC Dec. 15, 2000).

[31] The scope and content of the Theater's advertising were a central part of the Commission's analysis. The Commission found that Milwaukee Repertory Theater's "own advertising and marketing describe and even tout the . . . performances as entertaining." Milwaukee Rep, Wis. Tax Rptr. (CCH) ¶ 400–515, at 31,980–81.

¶ 58. The Commission also noted in *Milwaukee Rep* that such advertising was "understandable because . . . [Milwaukee Repertory Theater] must compete for the discretionary entertainment dollar in the public marketplace."[32]

¶ 59. In short, in *Milwaukee Rep* the Commission examined advertising, promotion, marketing, the mission of the theater company, and other specific facts about the performances which, taken together, established "the nature of the disputed performances." From these facts the Commission concluded that the theater performances were entertainment events and that the sales of admission to the theater performances were subject to sales tax under Wis. Stat. § 77.52(2)(a)2.

¶ 60. Both in this court and before the Commission, the Milwaukee Symphony Orchestra has argued that the analysis in *Milwaukee Rep* is inconsistent with the analysis in *Historic Sites*. The Milwaukee Symphony Orchestra reasons that *Historic Sites* focused on "the objective of a place charging admission," characterizing that as "the only realistic way to formulate the issue."[33] *Milwaukee Rep,* on the other hand, according to the Milwaukee Symphony Orchestra, gave greater weight to "the obvious objective of the public" in response to Milwaukee Repertory Theater's advertising and promotion, and went so far as to state that in the circumstances of that case, "[t]he educational mission and stated objective of the producer, [Milwaukee Repertory Theater], are irrelevant."[34]

---

[32] *Milwaukee Rep,* Wis. Tax Rptr. (CCH) ¶ 400–515, at 31,982.

[33] *Historic Sites,* Wis. Tax Rptr. (CCH) ¶ 202–662, at 12,796.

[34] *Milwaukee Rep,* Wis. Tax Rptr. (CCH) ¶ 400–515, at 31,982.

¶ 61. Responding to the Milwaukee Symphony Orchestra's arguments, the Commission's decision in the present case attempted to reach, as the court of appeals explained, "a reasonable and coherent reading of the three prior decisions."[35] The Commission explained that in synthesizing the prior cases, it is clear that all relevant factors, including the sponsor's objectives, the characteristics of the event, and the audience's motivations, are to be considered.

¶ 62. In the present case, the Commission articulated a sensible approach to the difficult question of how an adjudicative body should elucidate the "primary purpose" of an event as potentially multi-faceted as a symphony orchestra performance. The Commission explained that "[t]he better approach is to look not only at the motivation or purpose of the sponsor . . . but also at the nature of the event itself and the audience's motivation in attending, and its reaction to, the event. Of course, these three considerations will invariably overlap, and one piece of evidence, such as advertising, may provide insight into all three considerations."[36]

¶ 63. The Commission's stated approach is realistic and reasonable. It would be less reasonable to require a narrowly focused test, scrutinizing only the sponsoring organization's stated objectives, or to make any one factor controlling across the whole range of events and places in which Wis. Stat. § 77.52(2)(a)2. applies. We agree with the Commission that "a sponsor's statements that its events have an educational purpose, as in *Milwaukee Rep,* might be undermined by other

---

[35] *Milwaukee Symphony Orchestra,* 318 Wis. 2d 261, ¶ 21.

[36] *Milwaukee Symphony Orchestra v. DOR,* Docket No. 98–S-130, slip op. at 55–56 (WTAC Dec. 15, 2006).

evidence . . . ."[37] The broader interpretive approach the Commission has articulated will avoid exclusive reliance on the easily manipulated test of a sponsoring organization's stated purposes.

¶ 64. The Commission's interpretation and application of the statute in the instant case is reasonable and consistent with our own analysis of the statute in three key regards.

¶ 65. First, it makes sense to maintain the "primary purpose" analysis. Even if the factors for determining the "primary purpose" have varied with the context of each of the Commission's cases, the basic principle of a "primary purpose" or "primary objective" has been consistent since *Historic Sites* was decided in 1986.

¶ 66. This long-standing interpretation provides meaningful guidance to taxpayers and is a sound interpretation of the statute. Indeed, the Milwaukee Symphony Orchestra itself urges us to maintain the "primary purpose" analysis, since if *any* aspect of entertainment were sufficient to make concert admissions taxable, then the Milwaukee Symphony Orchestra's concerts admissions would certainly be taxable.

¶ 67. Alternative interpretations are no more reasonable. Specifically, the standard that the Department had advocated (and that the Commission rejected) in the *Historic Sites* case would have made *any* degree of entertainment sufficient to require sales tax. Such an interpretation would greatly expand the scope of events taxable as "entertainment."

¶ 68. Second, although a primary purpose may be hard to quantify, it has long been accepted that if the primary purpose of an event or place is 50 percent or more "amusement, athletic, entertainment or recre-

[37] *Id.* at 56.

ational," then admission to the event or place is taxable under this provision of the statute.

¶ 69. Notably, the statute previously made taxable "admissions to *places of amusement, athletic entertainment* or recreational events or places," Wis. Stat. § 77.52(2)(a)2. (1975) (emphasis added). The legislature amended this language by 1977 Wis. Act 142, which adopted the language that remains in place to the present, taxing "admissions to amusement, athletic, entertainment or recreational events or places." By eliminating the stand-alone phrase "places of amusement" and adding a comma between "athletic" and "entertainment," the legislature made clear that admissions to "entertainment . . . events or places" constitute a distinct, taxable category. This change broadened the reach of the statute considerably by clearly going beyond "athletic entertainment," and indicates a legislative intent to tax a more diverse set of events. The Commission's interpretation that admission to the Milwaukee Symphony Orchestra's concerts are taxable as entertainment is consistent with the statutory change.

¶ 70. We therefore maintain the interpretation that a taxpayer must prove that the event is 50 percent or more something other than "amusement, athletic, entertainment or recreational" to avoid sales tax. The briefs and argument in the present case are focused on whether the primary purpose of the concerts is "educational," rather than "entertainment."

¶ 71. An "educational" purpose is not the only possible alternative to "entertainment." An event may, for example, have a charitable or religious purpose as its primary purpose. We need not, however, articulate an exhaustive list of all possible antonyms to "enter-

tainment" or all adjectives that describe other purposes outside the statutory language in order to decide this case.

¶ 72. Third, the Commission's multi-factor approach to identifying the "primary purpose" is reasonable, and we do not identify any more reasonable way to interpret the statute. The question of how to discern the "primary purpose" of a place or event in administrative or judicial review is an elusive one, especially for events as diverse as the statute must address and as multi-faceted as the orchestra concerts at issue here. The proper approach to such an open-ended question should not be narrow or overly formalistic.

¶ 73. It is both reasonable and unsurprising to observe that different factors have had different weight in the Commission's evaluation of undertakings as different from one another as the Circus World Museum, the Oshkosh fly-in, and theater and orchestra performances.

¶ 74. In *Historic Sites,* the Commission emphasized the Circus World Museum's commitment to presenting historic information and historically accurate demonstrations and reenactments.[38] This focus led the Commission to the conclusion that the Museum's primary purpose was educational, rather than entertainment.

¶ 75. In the *Experimental Aircraft Association* case, the extensive findings of fact emphasized, among with many other factors, the lack of public advertising, the range of both historic and new aviation technologies

[38] *See Historic Sites,* Wis. Tax Rptr. (CCH) ¶ 202–662, at 12,796.

on display, the differences between the public area and the other areas of the grounds, and the different types of fees paid.[39]

¶ 76. In *Milwaukee Rep,* the Commission viewed promotional and advertising materials and the apparent motivations of the audience members as highly probative that the primary purpose of the plays was entertainment, amusement, or recreation, even though the sponsoring organization avowed an educational mission.[40]

¶ 77. The Commission's decision in the instant case clarified its decision in *Milwaukee Rep.* Although language in the *Milwaukee Rep* case suggested that "the educational mission and stated objective of the producer, [Milwaukee Repertory Theater], are irrelevant,"[41] this "irrelevant" language is properly read to mean that the Milwaukee Repertory Theater's stated mission and objective were not controlling over the specific facts of that case, particularly the Theater's marketing practices, which the Commission found "acknowledge[d] the entertaining nature of the performances."[42]

¶ 78. *Milwaukee Rep* does not say, and does not mean, that the mission and objective of the sponsoring organization are never relevant. Rather, the Commission's decision in *Milwaukee Rep* stands for the proposition that in spite of the sponsoring organization's

---

[39] *See Experimental Aircraft Ass'n,* Wis. Tax Rptr. (CCH) ¶ 202–672, at 12,824–12,825, 12,827–12,828.

[40] *See Milwaukee Rep,* Wis. Tax Rptr. (CCH) ¶ 400–515, at 31,982.

[41] *Id.*

[42] *Id.*

institutional mission or espoused objective, other specific facts may demonstrate that the primary purpose of an event for which admission is charged is, in fact, entertainment, amusement, or recreation. In such cases, the mission or objective of the sponsoring organization may become "irrelevant" to the ultimate determination under the statute.

¶ 79. *Milwaukee Rep* did not materially depart from the prior Commission decisions. The Commission's decision in the instant case clarified the *Milwaukee Rep* decision and explicitly distinguished the *Historic Sites* and *EAA* cases. We do not read the Commission's approach in *Milwaukee Rep* to be inconsistent with the prior decisions that addressed very different factual situations.

¶ 80.  In sum, we are persuaded that the interpretation of the statute adopted by the Commission in the instant case is reasonable and that no more reasonable interpretation is presented. We therefore uphold the Commission's statutory interpretation.

¶ 81.  Whether sales of admissions to the Milwaukee Symphony Orchestra concerts are subject to sales tax under Wis. Stat. § 77.52(2)(a)2. depends on the "primary purpose" of the event to which admission is charged. The determination of primary purpose is a holistic one, which looks to the motivation, mission, or purpose of the sponsoring organization, as well as any evidence of the motivation and reaction of those paying admission and ultimately the nature of the place or event itself. No formulaic inquiry is possible. The inquiry is akin to what may be described in other areas of law as assessing the "totality of the circumstances."

¶ 82. We now consider the Commission's application of its interpretation of Wis. Stat. § 77.52(2)(a)2. to the undisputed facts of the instant case.

¶ 83. The Commission considered the extensive evidence presented and concluded that the concert performances were primarily entertainment. This conclusion is a reasonable one based on the record. The court of appeals summarized well the record and the Commission's conclusion:

> The commission recognized that learning and an aesthetic experience was a component of attending the concert for many, that the music was artistically excellent, and that [the Milwaukee Symphony Orchestra's] current mission statement and certain activities were directed at educating the public on music so as to develop greater appreciation of it. However, there was also much evidence that [the Milwaukee Symphony Orchestra] and the attendees viewed the concerts as a form of entertainment and the commission was reasonably persuaded that this was the primary characteristic of the event—from the audiences' standpoint, from the marketing and advertising of [the Milwaukee Symphony Orchestra], and from the nature of the concerts themselves.
>
> . . . .
>
> The commission also considered the evidence of the optional pre-concert and post-concert lectures for some concerts and the written materials offered to concertgoers regarding the music performed at some concerts. It concluded that these ways of providing information about the music did not transform the concerts into primarily educational events. We are satisfied that these conclusions are reasonable because they are based on the evidence and focus on the concerts themselves, which are the events for which the tickets are

100

sold. We are also satisfied that it is not more reasonable to conclude that an expert's analysis of the music, taken together with the educational materials regarding the music made available to the concertgoers, make the concerts themselves primarily educational events.[43]

¶ 84. The Milwaukee Symphony Orchestra does not contest the Commission's factual determinations, which are more than adequately supported by evidence in the record. Considering those facts, and the record before us, we are persuaded that the Commission reasonably applied its interpretation of the statute to determine that the primary purpose of the Milwaukee Symphony Orchestra concerts was entertainment.

¶ 85. The Milwaukee Symphony Orchestra's principal argument is that the primary purpose of its concerts was educational or charitable, rather than for entertainment, amusement, or recreation. The Commission considered several dictionary definitions of "education."[44]

¶ 86. The Milwaukee Symphony Orchestra contends that the evidence shows that the primary purpose of their concerts was educational within these defini-

---

[43] *Milwaukee Symphony Orchestra*, 318 Wis. 2d 261, ¶¶ 25–26.

[44] *See Milwaukee Symphony Orchestra v. DOR*, Docket No. 98-S-130, slip op. at 57–58 (WTAC Dec. 15, 2006).

The Commission cited *The American Heritage Dictionary,* Second College Editions (1991), for these definitions:

1. The act or process of educating or being educated.

2. The knowledge or skill obtained or developed by a learning process.

The Commission also cited Webster's *Third New International Dictionary,* unabridged, (1981), as follows:

A. The act or process of educating or being educated.

101

tions and that a consensus exists in the law and in society that the Milwaukee Symphony Orchestra and the other fine arts organizations are educational or charitable institutions.[45]

¶ 87. It bears emphasis that the statutory text itself does not use the word "education." The controlling question is whether the Milwaukee Symphony Orchestra's concerts had a primary purpose of "entertainment," "amusement," or "recreation." Exposition of the "educational" aspects of the concerts is relevant only as a means of potentially proving that the "primary purpose" of the concerts was *not* "entertainment," "amusement," or "recreation."

> B. The act or process of providing with knowledge, skill, competence . . . . Desirable qualities of behavior or character or of being so provided esp. by a formal course of study, instruction or training.
>
> 2a. A process or course of learning, instruction, or training that educates or is intended to educate . . . esp. a formal course of instruction or training offered by an institution.

[45] Based on its overall arguments, the Milwaukee Symphony Orchestra implicitly advances a much broader definition of the word "education", more akin to the IRS's recognition of contributions to classical music orchestras as tax-exempt as serving "educational purposes." The Internal Revenue Service, Solicitor's Memorandum, 1919-1 C.B. 147, 1919 WL 49784 (1919), explained:

> "Educational" is not used in its meaning of instruction by school, college, or university, which is a narrower or more limited meaning of the word . . . but in its broader signification as the act of developing and cultivating the various physical, intellectual and moral faculties toward the improvement of the body, mind, and the heart.
>
> . . . .
>
> That the instruction in music given by a musical association is conveyed in such a manner as to be pleasurable does not negative the fact that such instruction is educational.

¶ 88. The Commission highlighted the Milwaukee Symphony Orchestra's Articles of Incorporation from both 1976 (the Milwaukee Symphony Orchestra's "primary purpose[s]" are "to organize and maintain and conduct a symphony orchestra and to present performances by the said orchestra . . . to further the cultivation and appreciation of the art of Music. . . . ") and 1988 ("The purposes for which the Corporation is organized are educational, to present classical and other orchestral music, performed with the highest degree of artistic excellence, to promote and develop public appreciation of and to educate the public in such music . . . .").[46] However, the Commission also found that "[o]nly a few of the many documents expressing [the Milwaukee Symphony Orchestra's] purpose or mission use any form of the word educate or similar words, and, except for the [1988 Articles of Incorporation], the term was always used in the context of educating people in the art of music."[47]

¶ 89. The Milwaukee Symphony Orchestra's financial analysis of the years in question showed that annualized education and outreach expenses ranged from $147,000 to $310,000 per year, or 1.24 percent to 2.5 percent as a percentage of total revenue.[48]

¶ 90. The Commission separately analyzed each type of concert offered and then concluded that none of them was primarily an educational event. None was offered by an educational institution; there was no formal course of instruction or structured instructional

---

[46] *Milwaukee Symphony Orchestra v. DOR,* Docket No. 98–S-130, slip op. at 3–4 (WTAC Dec. 15, 2006) (Findings of Fact Nos. 6, 7).

[47] *Id.* at 4 (Finding of Fact No. 8).

[48] *Id.* at 12 (Finding of Fact No. 39).

curriculum and no direct or concrete correlation between attending the concert and learning; attendance was not part of a process of training; and no skill or knowledge such as that developed by taking music lessons was necessarily imparted by attending concerts.

¶ 91. The Commission concluded that even if some educational values flowed from the Milwaukee Symphony Orchestra's concerts, those values would be insufficient to classify the concerts as primarily educational. "It is not clear what [the Milwaukee Symphony Orchestra] claims was taught at its concerts or learned by attending its concerts. To the extent [the Milwaukee Symphony Orchestra] is arguing that by attending one of its concerts, one becomes more educated in the sense of becoming more familiar with the music itself, that must be rejected because that same statement could be made about any event . . . ."[49]

¶ 92. Over the fiscal years at issue, the Commission found that the Milwaukee Symphony Orchestra's combined expenses for "sales and promotion," "media activities," and "marketing" ranged from $1.2 to $1.6 million per year.[50]

¶ 93. The Commission made extensive findings about the Milwaukee Symphony Orchestra's marketing activities and advertisements.[51] The content of the Milwaukee Symphony Orchestra's advertising and promotional communications amply demonstrates that even if the Milwaukee Symphony Orchestra did not view its concerts primarily as "entertainment," it at least wanted potential ticket-buyers to view them as such.

[49] *Id.* at 58.

[50] *Id.* at 26 (Finding of Fact No. 95).

[51] *Id.* at 26–35 (Findings of Fact Nos. 95–125).

¶ 94. Some of the advertising and promotional materials submitted as exhibits to the Commission also contain brief summaries of background and information about the music or musicians. However, the Milwaukee Symphony Orchestra has not identified any advertisement or public promotional material that describes the concerts themselves as "educational," promises "learning," or offers other descriptions that suggest an overall educational purpose.

¶ 95. Advertisements and promotional materials for Classical concerts included phrases such as "exhilarating music, soothing sounds, thrilling energy"; "an evening of delightful entertainment"; and "a wonderful time at the symphony!"[52]

¶ 96. Similarly, the Commission found that advertisements and promotional materials for various Pops concerts, often highlighting a special program or performer, promised "a fabulous time," "bubbly hits," "light classical favorites," "a fun-filled sing-along of popular songs . . . led by the world's foremost yodeler"; "top-notch entertainment"; "Entertainment with a capital E!" and many other similar entertainment-themed phrases.[53]

¶ 97. The Milwaukee Symphony Orchestra marketed the Kinderkonzerts with materials describing "entertaining your family," "Musical Fun for Your Whole Family!" as well as advertising the themed activities with phrases such as "the spectacle of the circus" and "enjoy the holiday extravaganza."[54]

¶ 98. The Milwaukee Symphony Orchestra contends that the Commission's findings and reasoning

---

[52] *Id.* at 30–31 (Findings of Fact Nos. 109, 113, 114).

[53] *Id.* at 31–33 (Findings of Fact Nos. 115–123).

[54] *Id.* at 34–35 (Findings of Fact Nos. 124–125).

relied too heavily on advertising and that by "cherry picking" entertainment-related phrases disproportionately from the advertising, the Commission mischaracterized the nature of the concerts as a whole and the "Classics" series concerts in particular. We disagree with the Milwaukee Symphony Orchestra.

¶ 99. As was true in *Milwaukee Rep,* the "overriding thrust" of the Milwaukee Symphony Orchestra's advertising, as well as its sales promotional materials, press releases, and other public materials, was to promote its concerts as entertainment events. The Milwaukee Symphony Orchestra identifies only a tiny fraction of its promotional materials that, in addition to promoting the concerts as entertainment, can also be construed to promote an educational purpose.

¶ 100. The Milwaukee Symphony Orchestra nevertheless argues that the advertising provides only "indirect" evidence of the actual characteristics of the Milwaukee Symphony Orchestra's concerts. The Milwaukee Symphony Orchestra urges the court to weigh other evidence more heavily and rely on two sources in particular: (1) testimony given before the Commission by their expert witness, Dr. Greenberg; and (2) a survey of audience motivations conducted by the American Symphony Orchestra League in 2000–01.

¶ 101. The Milwaukee Symphony Orchestra's expert witness, Dr. Greenberg, indeed testified that he disagreed with the Department's position that the Milwaukee Symphony Orchestra concerts are primarily events of amusement or entertainment. He opined that "there is a level of entertainment going on, amusement, but by far the primary impulse, the primary event that's going on in these concerts is an educational and informative impulse." Dr. Greenberg described the experience of listening to one piece (Beethoven's Symphony

No. 3 in E-flat major, "The "Eroica") as "profoundly instructive and profoundly educating . . . in the·most basic and important sorts of ways."

¶ 102.   We are not persuaded by this expert testimony to set aside the Commission's decision. It is the Commission's role to determine the persuasiveness and weight to accord to the evidence and testimony before it. The Commission concluded that the expert's testimony itself was indeed primarily educational but that there was no evidence that audience members would, by attending the concerts, become privy to any of the information the expert discussed. The pre- and post-concert lectures were not part of the concerts themselves and the publication *Encore* contained a small amount of information about the pieces themselves and was optional reading.

¶ 103.   The Commission also had before it other evidence and testimony. For instance, the Milwaukee Symphony Orchestra's own principal violinist testified that the concerts were "not instructional." Another witness, who has worked with numerous symphony orchestras and other performing arts organizations, opined that while there were both educational and entertainment values to symphony concerts, the entertainment factor was at least 80 percent.

¶ 104.   With regard to the educational materials for the Youth concerts, the record does not indicate what percentage of the schools, parents, or audience members used the optional materials. The Commission determined that even if all of them did, the Milwaukee Symphony Orchestra materials did not transform the concerts themselves into primarily educational events. The teaching and instruction, if any, was not conducted by the Milwaukee Symphony Orchestra. The Commission concluded that to some degree the children's con-

107

certs were a marketing technique to develop future audiences, since the Milwaukee Symphony Orchestra thought that children must be exposed to classical music before age 14 to establish an interest in attending classical concerts as adults.[55]

¶ 105. The Milwaukee Symphony Orchestra does not argue that any of the Youth concerts are distinguishable from the Classical concerts, which also have

---

[55] The concurrence/dissent concludes that the Youth concerts are not primarily entertainment within the meaning of Wis. Stat. § 77.52(2)(a)2. It does so by unfairly challenging two or three of the Commission's 137 findings of fact and by considering only those parts of the record that support its conclusions, rather than by considering the entire record. *See* concurrence/dissent at ¶¶ 157–158.

For example, the Commission found that the audiences were never asked about what they learned. The concurrence/dissent attacks this finding on the basis of nine response letters and returned questionnaires in the record (Exhibit 39) submitted following various events from 1993 to 1996. Because this sampling is small and apparently self-selected, its evidentiary value is not obvious. Moreover, the questionnaires did not ask the teachers what they learned or what their students learned. The teachers' responses are brief, variously praising the programs and preparatory materials, criticizing them as "not age appropriate," emphasizing the positive response of students, or suggesting that a more multicultural program would be "more curricularly appropriate." The teachers' responses (and a few student comments) also describe the concerts as entertaining and fun. A few older students emphasized the educational and "informative" aspects of the concerts, while one fourth grade class provided comments including "very pretty" and a comment from a student who "enjoyed sitting there looking doing nothing but listening." In short, from the limited evidence presented, no one characterization of the programs or materials is compelled.

Moreover, the concurrence/dissent does not reexamine all of the findings of fact relating to the Youth concerts that the

available educational materials. Rather, the Milwaukee Symphony Orchestra has instead chosen to present to the Commission and to this court a record and an argument that all of the Milwaukee Symphony Orchestra's concerts are not primarily entertainment. The Milwaukee Symphony Orchestra's brief indicates that examining each concert or each concert series to determine if it is primarily entertainment or primarily something else is impractical. The Milwaukee Symphony Orchestra's brief states that because "many Pops

Commission considered and fails to consider the Commission's definition of "education" as it relates to the Milwaukee Symphony.

The concurrence/dissent (¶ 137) looks only at the perspective of the Milwaukee Symphony and the perspective of the educators who took their classes to the concerts to determine whether the Youth concerts are primarily entertainment. Yet, according to the Commission (whose statutory interpretation is accorded due weight deference), the determination of whether the concerts are primarily entertainment is not a narrowly focused test with any one controlling factor. The determination depends on numerous factors, including the motivation of the sponsor, the nature of the event, the audience's motivation in attending, and the audience's reaction to the event.

The concurrence/dissent also observes, correctly, that educational materials were made available to teachers and families, although only on request. The materials were not made available to the students. Using these materials was optional, and their use was left to teachers and families, not to symphony staff. Thus, if the materials were essential to render the concerts educational rather than entertainment, the record does not indicate the extent of the use of the materials. Moreover, with the exception of cassette tapes, these materials were provided free of charge. Thus the very materials and activities which the concurrence/dissent finds most probative of the concerts' educational nature are those for which no sales tax could be charged because no money was paid.

109

offerings consist entirely or mainly of traditional classical works and most Pops tickets are sold in series," therefore "there is no practical method of separating these from the other concerts."[56] We agree with the Commission that on the basis of this record the three types of Youth concerts should be treated the same as the Classical concerts and should be treated as primarily entertaining events subject to the sales tax.

¶ 106. The Milwaukee Symphony Orchestra also relies on a survey of the audience motivations of symphony-goers, conducted by the American Symphony Orchestra League. One survey question asked respondents to review 13 statements and to rate on a scale of 1 (low) to 5 (high) how each described their usual concert experience. Seventy-eight percent of current subscribers gave a "5" or "4" ranking to the statement: "The classical orchestra experience is an educational and continual learning experience."

¶ 107. The survey was conducted after the audit period, did not include the Milwaukee Symphony Orchestra, and did not ask the question posed under the statute at issue. The survey questions did not compare the relative educational and entertainment values of symphony concerts, and in fact asked no questions that used any variant of the word "entertainment," which is the focus of our statutory interpretation here.

¶ 108. The Milwaukee Symphony Orchestra's own surveys referred to its concerts as entertainment and asked no questions about their educational value.

¶ 109. Finally, the Milwaukee Symphony Orchestra argues that imposing sales tax on their concert

---

[56] Brief and Appendix of Petitioner-Appellant-Cross-Respondent-Petitioner (Milwaukee Symphony Orchestra) at 45–46.

tickets conflicts with other tax laws that give favorable treatment to the Milwaukee Symphony Orchestra, along with other fine arts and performing arts groups, as educational or charitable organizations. For example, the Milwaukee Symphony Orchestra argues that it is exempt from federal income tax under I.R.C. § 501(c)(3) and has never reported the revenues from ticket sales to the IRS as "unrelated business taxable income" ("UBTI") within the meaning of I.R.C. §§ 511–513;[57] that it qualifies for special rates from the U.S. Postal Service as an "educational" organization; that it has been treated as exempt from property taxes under Wis. Stat. § 70.11(4) because it is a benevolent organization; that it purchases products without paying sales tax under Wis. Stat. § 77.54(9a)(f); and that it is not required to pay income/franchise taxes on ticket sales as "unrelated business taxable income" ("UBTI") revenue under Wis. Stat. § 71.26(1)(a).

¶ 110. We do not disturb these determinations of preferential status and non-taxation under other rules and statutes. They are largely unrelated to the question before us. We analyze the sales-taxability of admissions to Milwaukee Symphony Orchestra concerts as entertainment events or places, using the primary purpose test under Wis. Stat. § 77.52(2)(a)2. We do not analyze the institutional status or taxability of the Milwaukee Symphony Orchestra under other statutes.

¶ 111. In sum, none of the Milwaukee Symphony Orchestra's arguments is sufficient to overcome the due weight deference we give to the Commission's applica-

---

[57] Findings of Fact Nos. 43–46. In a 1993 audit, the IRS accepted that Milwaukee Symphony Orchestra's ticket sales were "substantially related" to the organization's tax-exempt purpose and would not be treated as "UBTI" revenue. Finding of Fact No. 48.

tion of its interpretation of Wis. Stat. § 77.52(2)(a)2. to the undisputed facts to reach the conclusion that the Milwaukee Symphony Orchestra's sales of concert admissions are subject to sales tax under the totality of the circumstances presented.

¶ 112.   We agree with the Commission that the relevant facts in *Milwaukee Rep* and in the instant case are "substantially indistinguishable" and that the Commission's decision in *Milwaukee Rep* effectively controls the outcome in the present case. The Commission's analysis in the present case of "the motivation or purpose of the sponsor . . . the nature of the event itself and the audience's motivation in attending, and its reaction to, the event" is reasonable.

\* \* \* \*

¶ 113.   In conclusion, we affirm the decision of the court of appeals. We too give the Commission's interpretation and application of the statute due weight deference and conclude that the Commission reasonably interpreted and applied Wis. Stat. § 77.52(2)(a)2. We see no more reasonable interpretation and application of Wis. Stat. § 77.52(2)(a)2. to replace the Commission's soundly reasoned decision. We therefore conclude that the sales of admission to the Milwaukee Symphony Orchestra concerts were sales of admission to "entertainment events" under Wis. Stat. § 77.52(2)(a)2. and are subject to sales tax.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 114.  PATIENCE DRAKE ROGGENSACK, J. (*concurring/dissenting*). I concur with the conclusion reached by the majority opinion that tickets to the

Milwaukee Symphony Orchestra's Classical and Pops Concerts are taxable under Wis. Stat. § 77.52(2)(a)2. However, because I conclude that the Youth Concerts[1] are not primarily entertainment within the meaning of § 77.52(2)(a)2., I also conclude that the Youth Concerts are not taxable events thereunder. Accordingly, I dissent from that portion of the majority opinion that decides that the sale of tickets to Youth Concerts are subject to sales tax under § 77.52(2)(a)2.

## I. BACKGROUND

¶ 115. The Milwaukee Symphony Orchestra (Milwaukee Symphony) performs three types of concerts: Classical Concerts, Pops Concerts and Youth Concerts.[2] Here, I am concerned only with the Youth Concerts. Milwaukee Symphony's Youth Concerts "consisted of three different series of concerts directed at children of different grade levels, namely, (a) High

---

[1] The majority concludes that it cannot distinguish the Youth Concerts from the Classical and Pops Concerts because the Milwaukee Symphony Orchestra did not argue that the Youth Concerts are distinguishable and because it "relie[d] on the nature of the music itself as presenting primarily educational content." Majority op., ¶ 26. While the Milwaukee Symphony Orchestra may have presented its case to this court as the majority states, we are not bound by a party's concession of law or arguments. *Lloyd Frank Logging v. Healy*, 2007 WI App 249, ¶ 15 n.5, 306 Wis. 2d 385, 742 N.W.2d 337 (concluding an appellate court is not bound by a party's concession of law, particularly where the concession involves an erroneous interpretation of a statute). Furthermore, the Tax Appeals Commission analyzed the Youth Concerts separately from the Classical and Pops Concerts in its decision.

[2] *Milwaukee Symphony Orchestra v. DOR,* Docket No. 98–S-130, slip op. at 16 (WTAC Dec. 15, 2006) (Finding of Fact No. 55) [hereinafter *Commission Decision*].

School concerts, (b) Youth ('Middle School') concerts, and (c) Kinderkonzerts."[3] All of the Youth Concerts were presented in the same Milwaukee concert halls used by Milwaukee Symphony for its Classical Concerts, namely the Milwaukee Performing Arts Center (now, the Marcus Center) and the Pabst Theater.[4] Milwaukee Symphony gave a 50 percent discount on tickets to children ages 6 through 17 and a 10 percent discount to educators.[5] All of the High School and Middle School concerts were performed on weekdays during school hours.

¶ 116. Some of the facts relating to the Youth Concerts are set out in the majority opinion.[6] However, there are additional undisputed facts of record that are relevant to the issue of whether Milwaukee Symphony Youth Concerts are subject to tax under Wis. Stat. § 77.52(2)(a)2. Those additional facts will be presented below.

## II. DISCUSSION

### A. Standard of Review

¶ 117. This case requires us to interpret and apply Wis. Stat. § 77.52(2)(a)2. Statutory interpretation and application are questions of law that we review independently, but benefitting from the interpretations that have preceded ours. *Richards v. Badger Mut. Ins. Co.*, 2008 WI 52, ¶ 14, 309 Wis. 2d 541, 749 N.W.2d 581. "Whether a statute is ambiguous is also a question of

---

[3] *Id.* at 21 (Finding of Fact No. 76).

[4] *Id.* at 21, 24–25 (Findings of Fact Nos. 77, 86, 92).

[5] *Id.* at 17 (Finding of Fact No. 61).

[6] Majority op., ¶¶ 20–25.

114

law" for our independent review. *Awve v. Physicians Ins. Co. of Wis., Inc.*, 181 Wis. 2d 815, 822, 512 N.W.2d 216 (Ct. App. 1994).

¶ 118. When the statutory interpretation at issue is that of an administrative agency, here the Tax Appeals Commission (Commission), we review the decision of the agency, not the decisions of the circuit court or the court of appeals. *DOR v. Menasha Corp.*, 2008 WI 88, ¶ 46, 311 Wis. 2d 579, 754 N.W.2d 95. In our review of an administrative agency's interpretation of a statute, we have applied three levels of common law deference:

> (1) no deference, often referred to as de novo review; (2) due weight deference, where we affirm an agency's interpretation if it is reasonable and we conclude that another interpretation is not more reasonable; and (3) great weight deference, where we affirm an agency's interpretation if it is reasonable, even when we conclude that another interpretation is more reasonable.

*Racine Harley-Davidson, Inc. v. State,*, 2006 WI 86, ¶ 104, 292 Wis. 2d 549, 717 N.W.2d 184 (Roggensack, J., concurring) (citing *UFE Inc. v. LIRC,* 201 Wis. 2d 274, 285–87, 548 N.W.2d 57 (1996)).

¶ 119. The majority opinion grants due weight deference to the Commission's statutory interpretation,[7] a decision with which I agree. Due weight deference may be granted when the legislature has charged the agency with administering the statute and the agency has had at least some experience in doing so. *Id.*, ¶ 105. The Commission is charged with administering Wis. Stat. § 77.52(2)(a)2. and has done so on three previous occasions. *See Milwaukee Repertory Theater, Inc. v. DOR,* Wis. Tax Rptr. (CCH) ¶ 400–515 (WTAC

[7] Majority op., ¶ 38.

Dec. 15, 2000); *Historic Sites Found., Inc. v. DOR,* Wis. Tax Rptr. (CCH) ¶ 202–662 (WTAC Jan. 21, 1986); *Experimental Aircraft Ass'n v. DOR,* Wis. Tax Rptr. (CCH) ¶ 202–672 (WTAC Jan. 21, 1986). In applying due weight deference, we will affirm the Commission's interpretation of § 77.52(2)(a)2. unless we conclude another interpretation is more reasonable. *Racine Harley-Davidson,* 292 Wis. 2d 549, ¶ 105 (Roggensack, J., concurring).

¶ 120.   In deciding whether another interpretation is more reasonable than the interpretation employed by the agency, we compare the agency interpretation with alternate interpretations. *Id.* This comparison requires that we construe the statute ourselves. *Id.* "In so doing, we employ judicial expertise in statutory construction, and we embrace a major responsibility of the judicial branch of government, deciding what statutes mean." *Id.*

B.   Interpretation and Application of
Wis. Stat. § 77.52(2)(a)2.

¶ 121.   Whether the sale of tickets to Youth Concerts are taxable is driven by the interpretation of Wis. Stat. § 77.52(2)(a)2. Section 77.52(2)(a)2. states in relevant part:

> (2) For the privilege of selling, performing or furnishing the services described under par. (a) at retail in this state to consumers or users, a tax is imposed upon all persons selling, performing or furnishing the services at the rate of 5% of the gross receipts from the sale, performance or furnishing of the services.
>
> (a) The tax imposed herein applies to the following types of services:

116

. . .

> 2. The sale of admissions to amusement, athletic, entertainment or recreational events or places . . . .

¶ 122.   The sale of tickets to all types of events are not taxable under Wis. Stat. § 77.52(2)(a)2. Rather, only those ticket sales to "amusement, athletic, entertainment or recreational events" are taxable. § 77.52(2)(a)2. Therefore, for example, ticket sales to religious, educational or political events are not taxable.

¶ 123.   The Commission concluded that the concerts were "primarily entertainment" events, which it defined as more than 50 percent entertainment. It then concluded that since the concerts were primarily entertainment events, all concert ticket sales were taxable under Wis. Stat. § 77.52(2)(a)2.[8]

¶ 124.   In order to determine whether there is an interpretation of Wis. Stat. § 77.52(2)(a)2. that is more reasonable than that chosen by the Commission, I must determine the meaning of § 77.52(2)(a)2. *Racine Harley-Davidson*, 292 Wis. 2d 549, ¶ 105 (Roggensack, J., concurring). In order to do so, I begin with the statutory words chosen by the legislature. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 125.   In its interpretation of Wis. Stat. § 77.52(2)(a)2., the Commission considered the types of events for which ticket sales are taxable, and it concluded that the concerts are entertainment events. Therefore, I begin by examining whether the meaning of "entertainment" is ambiguous or plain on its face, as employed in § 77.52(2)(a)2. This is a question of law. *Awve,* 181 Wis. 2d at 822.

---

[8] *Commission Decision* at 46.

¶ 126. A statute is ambiguous when reasonably well-informed people could differ as to its meaning. *Bruno v. Milwaukee Cnty.*, 2003 WI 28, ¶ 19, 260 Wis. 2d 633, 660 N.W.2d 656. The term "entertainment" is not defined in the statute, either as to its meaning or quantitatively. That is, the legislature has not said what the term "entertainment" means. The legislature also has not said whether 100 percent of the attributes of an event are required to constitute "entertainment" before an event is taxable as entertainment or whether some lesser quantity of entertainment attributes is sufficient.[9]

¶ 127. In determining what the legislature meant, words are given their common ordinary meaning, unless they are technical or specially defined words. *Id.*, ¶ 8. A dictionary is often helpful in determining the ordinary meaning of commonly used words. *Cnty. of Dane v. LIRC,* 2009 WI 9, ¶ 23, 315 Wis. 2d 293, 759 N.W.2d 571.

¶ 128. An event may have attributes of differing kinds of taxable events or it may contain attributes of both taxable and nontaxable events, as did the events examined in *Historic Sites* and *Experimental Aircraft.*[10] For example, a professional tennis match is an athletic event and also an entertainment event. Under my

_____

[9] The Commissioner defined "entertainment" on a quantitative basis when it concluded that the concerts were more than 50 percent entertainment and therefore "primarily entertainment" resulting in taxable ticket sales. *Commission Decision* at 45.

[10] *Experimental Aircraft Ass'n v. DOR,* Wis. Tax Rptr. (CCH) ¶ 202–672 (WTAC Jan. 21, 1986), compared entertainment and education, which is the same context that the parties have chosen as the most relevant taxable and nontaxable attributes of Milwaukee Symphony's Youth Concerts.

professional tennis match hypothetical, the sales of tickets to the tennis match would be taxable under Wis. Stat. § 77.52(2)(a)2. because both attributes of the event fall within statutory categories of taxable events.

¶ 129.  However, it is just as likely that an event, such as the Youth Concerts, is entertaining and educational. In that circumstance, one attribute of the event falls within a taxable event category and the other attribute does not. Webster's Dictionary defines entertainment as "the act of diverting, amusing, or causing someone's time to pass agreeably" and educate as "fostering to varying degrees the growth or expansion of knowledge." *Webster's Third New International Dictionary*, 757, 723 (1961).

¶ 130.  The Commission's answer to this quandary of events with taxable and nontaxable attributes is to tax admissions to an event when it characterizes the event as "primarily" falling within one of the categories listed in Wis. Stat. § 77.52(2)(a)2. In the case before us, the Commission characterizes the Youth Concerts as entertainment, which the Commission asserts occurs when more than 50 percent of the event is entertainment.[11] While greater than 50 percent may equate to

---

[11] The Commission asserts that Milwaukee Symphony agrees that "primarily entertainment" is the test. *Commission Decision* at 45. However, Milwaukee Symphony's brief in chief refers to *Historic Sites Foundation, Inc. v. DOR*, Wis. Tax Rptr. (CCH) ¶ 202–662 (WTAC Jan. 21, 1986), when it cites the "primarily entertainment" test. Milwaukee Symphony brief in chief at 2 n.4. "Primarily entertainment" was not the test the Commission employed in *Historic Sites*. Rather, the test in *Historic Sites* was the "primary objective" test, where the Commission focused on the primary objective of the Historic Sites Foundation in operating and maintaining the Circus World Museum. *Historic Sites*, Wis. Tax Rptr. (CCH) ¶ 202–662, at

"primarily," the word "primarily" does not appear in Wis. Stat. § 77.52(2)(a)2. However, because the legislature must have been aware that events could be characterized in more than one way, the Commission's interpretation is reasonable.

¶ 131. One could also interpret Wis. Stat. § 77.52(2)(a)2. as providing that nontaxable attributes of an event, if they are more than merely incidental,[12] cause the event to fall outside of the taxable categories listed in § 77.52(2)(a)2., so long as the primary purpose of the organization sponsoring the event is consistent with the nontaxable attributes of the event. This second interpretation is reasonable because § 77.52(2)(a)2. is not an over-arching tax on admissions to all public events, and the primary purpose of the sponsoring entity has been employed by the Commission in past applications of § 77.52(2)(a)2.[13] Accordingly, I conclude

12,796. That there were performances such as Elephant Playtime in River, Unique Circus Instrument Concerts, Happy's Clown Capers where attendees were entertained, *id.* at 12,794, did not alter the Commission's focus on the primary objective of the Historic Sites Foundation. Furthermore, a full review of Milwaukee Symphony's brief shows that while it may accept the words, "primarily entertainment" as setting out the applicable test, Milwaukee Symphony argues that the test is applied from Milwaukee Symphony's perspective, just as the "primary objective" test in *Historic Sites* was applied. That is, Milwaukee Symphony's primary objective in putting on the concerts should control whether ticket sales are taxable.

[12] *See* Wis. Stat. § 77.51(5) (2007–08) (defining "incidental").

[13] *See Historic Sites,* Wis. Tax Rptr. (CCH) § 202–662, at 12,796; *Experimental Aircraft,* Wis. Tax Rptr. (CCH) § 202–672, at 12,829 (analyzing the "primary purpose" of the Experimental Aircraft Association's hosting the fly-in (the event under con-

that this second interpretation is reasonable as well. When there are two reasonable interpretations of a statute, it is ambiguous. *See Kalal*, 271 Wis. 2d 633, ¶ 47.

¶ 132.   Because Wis. Stat. § 77.52(2)(a)2. is a taxing statute, the taxpayer is entitled to the benefit of any ambiguity in the statute. *City of Racine v. DOR*, 115 Wis. 2d 510, 512, 340 N.W.2d 741 (Ct. App. 1983). However, when an administrative agency is interpreting a statute that it was charged by the legislature with administrating and the agency has had at least some experience in doing so, its interpretation prevails unless there is a more reasonable interpretation. *UFE*, 201 Wis. 2d at 285–87. The Commission has been designated as the final arbiter, subject to judicial review, of the Department of Revenue's redetermination decisions, such as is now before this court based on the meaning of § 77.52(2)(a)2. Wis. Stat. § 73.01(4) (2007–08); *see Gilbert v. DOR*, 2001 WI App 153, ¶ 9, 246 Wis. 2d 734, 633 N.W.2d 218.

¶ 133.   There is a potential tension between the maxim of statutory interpretation that provides that the taxpayer is entitled to the benefit of ambiguities in taxing statutes and the maxim that when an agency is charged with administering a statute its reasonable interpretation should prevail unless another interpretation is more reasonable. Because, as I explain below in regard to the Youth Concerts, under either interpretation those concerts are not taxable events, I am not required to resolve that potential tension.

siteration) as the test to determine whether admission tickets were taxable). This test, as the "primary objective" test of *Historic Sites*, focused on the motivation of the entity that sponsored the event.

¶ 134. First, I agree with part of the Commission's conclusion that ticket sales to an event that has attributes of both taxable and nontaxable events may be taxed. I so conclude because the legislature could not have been unaware that some events would have at least incidental attributes of events that it chose not to tax.

¶ 135. Accordingly, the question presented herein by my application of the two reasonable interpretations of Wis. Stat. § 77.52(2)(a)2. identified above becomes: What is the level of nontaxable attributes in the Youth Concerts and from whose perspective are these mixed-attribute events evaluated?

¶ 136. Stated otherwise, because the Youth Concerts will cause a child's knowledge to expand as the child is presented with a new musical genre or the exposure to orchestral instruments with which he is not familiar, thereby educating the child, and during the concerts the child's time will pass agreeably, thereby entertaining the child, I must determine how the Youth Concerts' taxable and nontaxable attributes are to be evaluated. *See Webster's Third New International Dictionary,* 723, 757 (1961) (defining educate and entertainment). In so determining, I examine the Youth Concerts' attributes first from the perspective of the Milwaukee Symphony, the entity that presented the concerts, and then from the perspective of the educators who took their classes to the concerts during the school day, based in part on the way in which the Youth Concerts were marketed.

### 1. Milwaukee Symphony's perspective

¶ 137. Milwaukee Symphony was incorporated for educational purposes.[14] Milwaukee Symphony's Articles of Incorporation, as restated in 1988, set out its purposes as follows:

---

[14] *Commission Decision* at 4 (Finding of Fact No. 7).

The purposes for which the Corporation is organized *are educational,* to present classical and other orchestral music, performed with the highest degree of artistic excellence, to promote and develop public appreciation of and *to educate the public in such music,* and to engage in any other lawful activity within the purposes for which corporations may be organized under Chapter 181 of the Wisconsin Statutes.[15]

Milwaukee Symphony maintains an "Education Office" and employs a "Director of Education."

¶ 138. Milwaukee Symphony also approached the Youth Concerts in a way to facilitate educational opportunities for the children. For example, in advance of the concerts, Milwaukee Symphony offered teachers whose classes would be attending concerts three different types of materials that teachers could use to prepare their students. First, Milwaukee Symphony offered teaching instruction materials that included "deeper discussions about the themes of the concerts, the music and the composers, and suggestions for class discussion, as well as inter-disciplinary publications relating to the music."[16] Second, Milwaukee Symphony offered docent classroom presentations, in which a trained docent visited the teacher's classroom to prepare the students for the upcoming concert.[17] Third, for a small fee, cassette tapes of the music were available.[18]

---

[15] *Id.* (emphasis added).

[16] *Id.* at 22 (Finding of Fact No. 81).

[17] The docents are individuals from the Milwaukee Symphony Orchestra League trained in presenting information about the Youth Concerts.

[18] The cassette tapes were the only materials that required the school to pay a fee. The instruction materials and docent presentations were free of charge.

123

¶ 139. Finally, after the High School and Middle School concerts, Milwaukee Symphony distributed questionnaires to the teachers to complete.[19] The questionnaires asked which of the instructional materials provided were "used to prepare students for the concert;" to what extent Milwaukee Symphony met its objectives in presenting the concerts;[20] whether the materials were appropriate for use by students, teachers and for lesson plans; and whether the teacher created lesson plans as an outgrowth of the materials and concert. Each of these questions demonstrates Milwaukee Symphony's desire to gauge the educational value of its concerts. Milwaukee Symphony requested that the questionnaires be returned to its "Education Office," care of "Sue Medford, MSO Education Concert Manager."

### 2.   Perspective of the teachers

¶ 140.   The teachers whose classes were to attend a concert were to request the offered materials. The order form for requesting such materials was on the same form the teachers used to order the concert tickets.[21] Requesting any of these materials was as simple as checking a box on that form and indicating to whom the materials

---

[19] R. 5, Ex. 39 (Milwaukee Symphony questionnaires).

[20] The five objectives, which were listed in the pre-concert materials, were:   (1) "To recognize that music can suggest the sounds of nature, the city, and people who live in a certain place and time"; (2) "To understand how music can express a story"; (3) "To understand that music can express the cultural heritage of a specific country"; (4) "To examine how music creates a sense of motion"; and (5) "To discover how the concept of sound is used in language arts." R. 5, Ex. 39 (Milwaukee Symphony questionnaires).

[21] R. 5, Ex. YYYYYY (1996 Middle School Concerts Teacher's Guide).

were to be sent. The order forms were returned to Milwaukee Symphony's *"Education* Concert Manager."[22]

¶ 141. The students were taken to the Youth Concerts during the school day, by their teachers, who had the materials sent by Milwaukee Symphony that described educational features of the concerts. Responses to questionnaires indicated that teachers coordinated the concerts and pre-concert materials with their classroom lesson plans to develop the students' knowledge and understanding of the music that would be presented.[23] The teachers' educational focus also is evidenced by their taking time from the usual class routine to bring students to the concerts.

¶ 142. As an example of the Youth Concerts, I begin with the High School concerts. They were performed only on weekdays during school hours. The High School concerts generally featured the full symphony orchestra and consisted of a performance of "traditional classical repertoire" and other "serious music, all of which [was] connected to an overall *educational* theme appropriate for high school students."[24] One such "educational theme" was a series of concerts entitled, "American History Through Music." "This series looked at the United States through music and the humanities from its revolutionary beginnings through 20th Century urbanization."[25]

¶ 143. Another example of a High School thematic concert was "The Cutting Edge" concert, which "cel-

---

[22] *Id.* (emphasis added).

[23] *See* R. 5, Ex. 39 (Milwaukee Symphony questionnaires).

[24] *Commission Decision* at 22 (Finding of Fact No. 79) (emphasis added).

[25] *Id.*

ebrate[d] a handful of compositions that were radical departures from the music of their day. Extending back over nearly three centuries, the concert present[ed] a chronological cavalcade of orchestral music that was actually shocking to its first audiences."[26] The teachers' materials included biographies of each composer and an example of why his music was on the "cutting edge" for his day.[27]

¶ 144. High school students received "concert program guides, some of which contained some explanations about the orchestra, background materials about the composers, glossaries, explanatory materials about the music, suggestions as to what to listen for, questions for thought and discussion."[28]

¶ 145. As with the High School concerts, Middle School students attended concerts linked to thematic educational experiences. For example, they were presented with "The Science of Sound" concert where "students [would] get inside that creative problem-solving process as they look[ed] through a musical 'microscope' at the most revolutionary piece in the history of symphonic music, Beethoven's Third Symphony!"[29] "The Science of Sound" had a special docent program where trained volunteers came to middle schools to explain this intriguing proposition.

¶ 146. "Kaleidoscope," featuring "Children of Wisconsin" and "Children of the World," was also presented

---

[26] R. 5, Ex. KKKKKK (1992–93 High School Concerts Teacher's Guide).

[27] *Id.*

[28] *Commission Decision* at 22 (Finding of Fact No. 80).

[29] R. 5, Ex. YYYYYY (1996 Middle School Concerts Teacher's Guide).

as a Youth Concert.[30] It attempted to generate an understanding of "both our own culture and the cultures of distant peoples."[31] The materials presented to the teachers explained:

> [T]his concert brings to life the musics and cultures of Latin America, the Pacific Rim, Europe and Africa. Among the common elements in this music is some very exciting drumming, not only by the [Milwaukee Symphony] percussionists, but also by a Native American dancer and drummer, and Earl Thompson, an African drummer-dancer.[32]

¶ 147.  Other Kaleidoscope materials described the composers of the music from around the world and from the United States. For example, Yagi Bushi, a Japanese composer, was presented through his music and his early beginnings as a "farmer's son."[33] Anton Dvorak, a Czech composer, was described in regard to his composition that would be played.[34] Leonard Bernstein, a United States composer, was presented as being "particularly effective when evoking the nervous intensity of America's modern urban life."[35]

¶ 148.  The Middle School concerts were similar to the High School concerts except that they were geared toward a younger age group, students in grades three through eight. Individual concerts were directed at dif-

---

[30] R. 5, Ex. MMMMMM (1993–94 Youth Concerts Program Guide for Teachers).

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

ferent pairs of such grades.[36] For example, one concert may be directed at third and fourth grade students, while another concert may be directed to seventh and eighth grade students.

¶ 149. As with the High School concerts, the Middle School concerts generally featured Milwaukee Symphony's full orchestra; the same three types of pre-concert materials and docent instruction were available to teachers upon request. Concerts were likewise presented only during weekdays and during school hours.[37]

¶ 150. As with the High School concerts, the Middle School concerts were marketed: "1) to present live concerts which will excite young people and open them up to a world of symphonic music which they will understand and love[; and] 2) to provide music specialists and classroom teachers with program themes, relevant curriculum and effective resources which can be integrated into the total learning environment."[38]

¶ 151. Milwaukee Symphony's "Kinderkonzerts were directed at very young children (ages 3–8)."[39] Kinderkonzerts "consisted mostly of traditional music from the classic repertoire that would be appropriate for young children," but also included popular children's songs.[40] Each concert was organized around a specific

---

[36] *Commission Decision* at 23 (Finding of Fact No. 85).

[37] *See* R. 5, Ex. 58 (1994–95 Youth Concerts brochure) (indicating that the Middle School concerts were offered at 10:30 a.m. and 12:30 p.m.); R. 5, Ex. 27 (1994–95 High School Concerts order form) (indicating that the High School concerts were offered at 10:30 a.m. and 12:30 p.m.).

[38] R. 5, Ex. 58 (1994–95 Youth Concerts brochure).

[39] *Commission Decision* at 24 (Finding of Fact No. 88).

[40] *Id.*

theme that influenced the entire performance.[41] The themes were meant to "facilitate the children's learning about the music."[42]

¶ 152. "Families that subscribed to the Kinderkonzerts received advanced 'Kinderkits,' consisting of written materials containing brief descriptions of the music and the composers, lists of suggested activities, materials for parents to read to their children regarding the music, pictures and descriptions of orchestra instruments, and lists of suggested readings."[43] The Kinderkits included "Kinder Cards," which are cards featuring pictures of and information relating to musical instruments. Parents were responsible for instruction based on these materials.[44]

¶ 153. The Kinderkonzerts often included educational activities in addition to the concert itself. For example, concerts have featured a "Petting Zoo," in which the children were permitted to touch the musical instruments that they heard during the preceding concert.[45] Other activities based on the music presented in the concerts were designed to create an interest in music among very young children.[46]

¶ 154. My examination of the record, as set forth in the preceding discussion, leads me to conclude that on a quantitative basis the educational attributes of the Youth Concerts exceeded the concerts' entertainment attributes. Therefore, under the Commission's test, the Youth Concerts were not "primarily entertainment."

---

[41] *See id.* at 25 (Finding of Fact No. 91).

[42] *Id.*

[43] *Id.* at 24–25 (Finding of Fact No. 89).

[44] *Id.*

[45] *Id.* at 25 (Finding of Fact No. 90).

[46] *See id.* (Finding of Fact No. 93).

Furthermore, as set forth in the preceding discussion, the record conclusively establishes that the primary purpose of Milwaukee Symphony in creating and presenting the Youth Concerts was educational. Accordingly, under either reasonable interpretation of Wis. Stat. § 77.52(2)(a)2., admissions to the Youth Concerts are not taxable.

¶ 155. Although, I normally would defer to the Commission's application of its own interpretation of Wis. Stat. § 77.52(2)(a)2., I cannot do so here because the Commission's conclusion that the Youth Concerts are primarily entertainment is based on factual findings that are not supported by credible and substantial evidence in the record. *See Town of Barton v. Div. of Hearings & Appeals,* 2002 WI App 169, ¶ 7, 256 Wis. 2d 628, 649 N.W.2d 293 (explaining that we will affirm an agency's factual determination that is supported by credible and substantial evidence).

¶ 156. First, the Commission said, *"Never* were [the] concert audiences asked if they had learned anything from the [Milwaukee Symphony] concerts, or how [Milwaukee Symphony] could improve the educational value of its concerts."[47] This assertion is directly contradicted by the questionnaires that were sent to the teachers who were part of the Youth Concert audiences.[48] In addition to that contradictory evidence, there is no substantial and credible testimony in the record to support the Commission's statement that the Youth Concert audiences were *never* asked about the educational impact of the concerts.

¶ 157. Second, the Commission said, "[Milwaukee Symphony] had *no* structured instructional curriculum

---

[47] *Id.* at 65 (emphasis added).

[48] *See* R. 5., Ex. 39 (Milwaukee Symphony questionnaires).

or specific instructional course . . . and *no* skill or knowledge was obtained or developed by attending concerts."[49] This assertion is contradicted by the educational, instructional materials that accompanied the programs, "American History Through Music," "The Cutting Edge," "The Science of Sound," "Kaleidoscope" and "The Petting Zoo." Again, with regard to the Youth Concerts, there is no substantial and credible evidence to support the Commission's statement that *no* skill or knowledge was acquired. Even the very young children who attended concerts, and then participated in the Petting Zoo, were learning which sounds came from which instruments as they came on stage and touched a violin, a trumpet or some other instrument that had been played during the concert.

¶ 158. Third, the Commission stated: "There is *no* direct or concrete correlation between attending a concert and learning."[50] This is an unreasonable statement that shows either a lack of knowledge about classical music or a misperception of what is meant by learning. To be educated in the appreciation of music is one of the pillars of a classical education. As Igor Stravinsky explained when speaking of the work of classical composer, Robert Schumann, " 'Schumann is the composer of childhood . . . because children learn some of their first music in his marvelous piano albums.' " *The Houghton Mifflin Dictionary of Biography* 1367 (2003) (quoting Igor Stravinsky, *Themes and Conclusions* (1972)).

¶ 159. Accordingly, I conclude that the Commission erred in its application of Wis. Stat. § 77.52(2)(a)2. to the Youth Concerts because: (1) it applied § 77.52(2)(a)2. based on factual findings for which there

---

[49] *Commission Decision* at 58 (emphasis added).
[50] *Id.* (emphasis added).

is not substantial and credible evidence in the record; (2) it applied § 77.52(2)(a)2. without consideration of the extensive record in regard to the educational attributes of the Youth Concerts; and (3) it applied § 77.52(2)(a)2. based on erroneous, preconceived notions about the nature of music in regard to the education of children, for which there is absolutely no support of any type in the record. Accordingly, I conclude that the Youth Concerts are not primarily entertainment events, but rather, they are educational events, wherein the sale of admission tickets are not taxable under § 77.52(2)(a)2.[51]

## III. CONCLUSION

¶ 160. I concur with the conclusion reached by the majority opinion that tickets to Milwaukee

---

[51] The Commission's brief also relies on Wis. Admin. Code § Tax 11.65(1) (Sept. 2006), which addresses admission ticket sales that are taxable. The administrative rule gives as examples of taxable ticket sales, "admissions to movies, ballets, musical and dance performances, ball games, campgrounds, circuses, carnivals, plays, hockey games, ice shows, fairs, snowmobile and automobile races, and pleasure tours or cruises." § Tax 11.65(1)(a).

There is a tension between a literal reading of § Tax 11.65(1), wherein the examples of taxable events are stated in rather absolute terms, and the Commission's interpretation of Wis. Stat. § 77.52(2)(a)2. as taxing admissions to events that are "primarily" amusement, entertainment, athletic or recreational. However, I note that an administrative rule cannot exceed the scope of the statute, see *Oneida Cnty. v. Converse,* 180 Wis. 2d 120, 125, 508 N.W.2d 416 (1993), and that the Commission is the final arbiter of the meaning of taxation statutes, subject only to judicial review, *Gilbert v. DOR,* 2001 WI App 153, ¶ 9, 246 Wis. 2d 734, 633 N.W.2d 218. Wis. Stat. § 73.01(4). Accordingly, I have no need to address the rule because I have employed the Commission's interpretation of § 77.52(2)(a)2. in the above discussion.

Symphony's Classical and Pops Concerts are taxable under Wis. Stat. § 77.52(2)(a)2. However, because I conclude that the Youth Concerts are not primarily entertainment within the meaning of § 77.52(2)(a)2., I also conclude that the Youth Concerts are not taxable events thereunder. Accordingly, I dissent from that portion of the majority opinion that decides that the sale of tickets to Youth Concerts are subject to sales tax under § 77.52(2)(a)2.

¶ 161. I am authorized to state that Justice MICHAEL J. GABLEMAN joins this concurrence/dissent.